[No. 11164. Department Two. — July 28, 1886.]

## F. G. FLANAGAN, APPELLANT, *v.* JOSEPH BROWN, RESPONDENT.

AGENT FOR COLLECTION — RELEASE OF DEBT BY PRINCIPAL — PROMISSORY NOTE — ACTION ON BY AGENT. — Where the owner of a promissory note delivers it indorsed in blank to another, with power to manage, transfer, or dispose of it, under an agreement whereby its proceeds are to be equally divided between them, the transferee is a mere agent for collec-

tion, and a release of the note subsequently executed by the owner to the payee is a defense to an action against him by the agent.

ID. — POWER COUPLED WITH INTEREST — REVOCATION OF AGENCY — CONSIDERATION. — In such a case, the power of the agent is not coupled with an interest within the meaning of section 2356 of the Civil Code, and may be revoked by the principal, notwithstanding the contract of agency was founded upon a valuable consideration.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion.

*T. Z. Blakeman*, for Appellant.

The relation established by the agreement between Conroy and Flanagan, conceding it to have been one of agency, was founded upon a valuable consideration, and could not be revoked by the principal. (Story on Agency, sec. 477; 1 Parsons on Contracts, 70; *Brown* v. *Pforr*, 38 Cal. 550; *Hunt* v. *Rousmanier*, 8 Wheat. 202; *Barr* v. *Schroeder*, 32 Cal. 617.) The plaintiff had a power coupled with an interest in the note. (*Davis* v. *Lane*, 10 N. H. 160; *Gaussen* v. *Morton*, 10 Barn. & C. 731; *Watson* v. *King*, 4 Camp. 272; *Matthiessen* v. *McMahon*, 38 N. J. L. 536; *Hill* v. *Day*, 34 N. J. Eq. 150; Story on Agency, sec. 496.)

*James A. Waymire*, for Respondent.

SEARLS, C.—This is an appeal from a judgment in favor of defendant, and from an order denying a new trial.

We are of opinion the judgment and order should be affirmed, for the reasons given by the learned judge who decided the case in the court below on the rendition of judgment, and which are as follows:—

"This is an action on a promissory note for twenty-seven thousand dollars, executed by defendant September 4, 1876, payable four months after date, and bearing

interest at ten per cent per annum from maturity.   The
original holder of the note was the National Bank of the
State of Missouri.

"At a sale of the assets of said bank, J. F. Conroy be-
came the purchaser of the note in suit, paying therefor
the sum of thirty-two dollars.   Subsequently Conroy and
the present plaintiff entered into an agreement reciting
that, whereas Flanagan was the owner of thirty bonds of
the St. Louis County Railroad, and Theodore W. Gaty
(whose name was used for Conroy's) was the owner of
the note in suit for twenty-seven thousand dollars, it was
agreed that Gaty should place his note in the hands of
Flanagan, so as to enable him to manage, transfer, or
dispose of said bonds and said note.   The agreement
concludes in these words: 'All proceeds, money, or prop-
erty realized from the transaction, after payment of ex-
penses, shall be equally divided between the parties, but
in no event shall said note be sold or disposed of for a
sum of money or other property whereby a net sum shall
be realized by said Gaty of less than $250.'

"The action was commenced by Flanagan alone.
Pending the action, the defendant, after some negotia-
tion, obtained from Conroy a release, which by supple-
mental answer is set up as a bar to this action.

"The question to be determined is, Does this release
from Conroy bar plaintiff's right of recovery?   Defend-
ant claims that Flanagan was a mere agent, whose author-
ity was revocable at the pleasure of Conroy, his principal,
and that Flanagan had no such right in the matter as
would defeat Conroy's control of the property and his
release of any claim thereon.   Plaintiff claims that he is
the owner of the legal title, and also of a one-half interest
in the proceeds of the note.

"If plaintiff is the legal owner of the note, the owner-
ship is not evidenced by the agreement hereinbefore
referred to.   No language of transfer or assignment is
found therein.   It does not appear therefrom that Con-

roy was parting with the ownership, or vesting the title in Flanagan. On the contrary, it appears that the note is referred to as Conroy's note, which is placed in Flanagan's hands to enable him to manage, transfer, or dispose of the same. This is language creating an agency. That it intended to create and does create an agency is not negatived by the fact that the subject of the agency is a promissory note rather than some other species of personal property. It seems to me that the mere temporary custody which a collector has of a promissory note indorsed in blank does not place him in a position to dispute as against his employer the question of ownership. Nor is he in a position to say to the party liable on the note that a release obtained from the real and sole owner is not valid to defeat a recovery by the mere agent, who happens to be the custodian of the paper.

"The mere manual holding of the paper would give no right of action to a thief who might sue upon it. The entire destruction or loss of the paper would not bar a recovery by the real owner. The physical custody of the paper is a false element in the controversy to determine ownership as between a principal and his agent. It may be that it cuts a controlling figure as between the agent and the maker of the note when no question is made of the agent's right to represent and act for the owner. When the agent holds a note indorsed in blank, and sues upon it in behalf of his principal, it is no defense for the maker to say that the plaintiff in the suit is not the owner, and this, as I understand it, is all that is really decided in the case of *Curtiss* v. *Sprague,*.51 Cal. 241. There the defendant applied for a nonsuit, and the Supreme Court held that it was not error to deny the motion; and held further that it was error to join as plaintiff one who had assigned the note with the understanding that he should have half of the amount recovered. The agreement under which the note in suit was delivered to Curtiss, the plaintiff, was that he should bring

the suit, and divide the proceeds with his assignor. That case involved only a question of proper parties and pleadings; it did not deal with any question of release by the real owner of the claim in suit.

"In my judgment, that case is not to any extent determinative of the rights of the parties here. The agreement here says nothing of the right of Flanagan to bring any suit upon the note, nor of his right to control such suit when brought.

"Far less does the agreement divest the principal of the absolute ownership of the obligation represented by the paper. Flanagan's custody of that paper determines nothing as against Conroy's ownership of it, or the efficacy of Conroy's release of any obligation represented by it.

"If Flanagan has any standing, it must result from something else than his mere custody of the paper; he is not the owner of it; he is a mere agent intrusted with its custody; was he such an agent that his principal had not the right to revoke his authority?

"His authority was defined and limited by the agreement signed by the parties. Article 6 of chapter 1 of title 9 of the Civil Code treats of the termination of agency. Section 2356 of that article is as follows: 'Unless the power of an agent is *coupled with an interest* in the *subject* of the agency, it is terminated as to every person having notice thereof by,—1. Its revocation by the principal.'

"This language is not as broad as that found in some of the text-books which define the extent of the principal's right of revocation of the agent's authority. It does not include, as do many of the books, an agency given for a valuable consideration as one whose power is irrevocable. It makes use of language frequently found and construed in the text-books, and omits a portion of the limitations set on revocability. It seems to limit the principal's power of revocation to cases when

his agent is vested by his principal with an interest in the property itself which is the subject of the agency. The term 'power coupled with an interest' is well understood, and is discussed and defined in the very cases cited by the code commissioners under the section above referred to. These cases lay down the rule that a power coupled with an interest is where the grantee has an interest in the estate as well as in the exercise of the power. It is determined to exist or not accordingly as the agent is found to have such estate or not before the execution of the power. If his interest is only a right to share the proceeds which result from the execution of his power, the agent has not a power coupled with an interest.

"The case of *Brown* v. *Pforr*, 38 Cal. 550, recognizes the rule as to power coupled with an interest.

"There the agents had an interest to the extent of $750 in the execution of the power conferred within the time named in their contract of agency, but they had no interest in the real estate which was the subject of the agency. Accordingly, the principal, even within the time limited in the contract, was held to be at liberty to revoke.

"But in stating the rule as to revocability, the language of Sanderson, J., is broader than the language of the code section above cited. He says: 'It is a general rule that any agency, whether to sell land or to do any other act, unless coupled with an interest, *or given for a valuable consideration*, is revocable at any time.' The words, 'or given for a valuable consideration,' as thus used in stating the rule by the Supreme Court in 1869, are not found in the code section as adopted in 1872. But the other words, 'power coupled with an interest,' are used, and presumably with the construction put upon them in that case.

"The case of *Hartley and Minor's Appeal*, 53 Pa. St. 212, is instructive in this connection.

"There was an ordinary agency, established by letter of attorney, to collect moneys that might be due the principal from the estate of her father. For their services the attorneys were to have one half of the net proceeds of what they might recover for her. The court there says:—

"'The plaintiffs in error claimed that this clause [giving one half of the amount recovered] rendered the power irrevocable by the principal, under the idea that it was a power coupled with an interest. This was a mistake, as all the authorities show. To impart an irrevocable quality to a power of attorney in the absence of any express stipulation, and as the result of legal principles alone, there must co-exist with the power an interest in the thing or estate to be disposed of or managed under the power. . . . . In the case in hand, the power and the interest could not co-exist. The interest the appellants would have would be in the net proceeds collected under the power, and the exercise of the power to collect the proceeds would be *ipso facto* to extinguish it entirely, or so far as exercised. Hence the appellants' interest would properly begin when the power ended.' The power was therefore held revocable.

"Flanagan, in the sense of the rule here laid down, and of the rule laid down by section 2356 of the code, was not the holder of a power coupled with an interest. If not, by the terms of that section his power was revocable, and his principal's release is a good bar to this action.

"But even if the rule was broader than its terms as laid down in that section, and contemplated an agency given for a valuable consideration as irrevocable, I think there is much force in the suggestion of defendant's counsel that in equity Conroy was the owner of the bonds as well as of the note for which they were originally held as collateral. If that be so, the agreement as to the agency shows no valuable consideration passing from

Flanagan to Conroy, and the agency would not under any rule laid down on the subject be irrevocable.

"It results from these views that the release set up is a good bar to the action. If plaintiff has sustained any loss or damage through the action of his principal, he may look to him for damages. Judgment will be for defendant.    " SULLIVAN, J."

The other points made in the case cannot affect the result, and require no notice.

BELCHER, C. C., and FOOTE, C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment and order are affirmed.

Hearing in Bank denied.