[No. 9959. Department One. — March 27, 1888.]

LYMAN C. PARKE ET AL., RESPONDENTS, v. A. H. FRANK, APPELLANT.

AGENCY — CONSIDERATION — REASONABLE TIME — REVOCATION — LIABILITY OF PRINCIPAL. — Where a principal, for a valuable consideration, agrees not to revoke an agency for a reasonable time, and in view of the circumstances and nature of the contract a reasonable time can be ascertained, he has no legal right to revoke it during such time. If he does so, and the agent is thereby deprived of authority further to act as such, the principal is liable in damages by reason of the breach of his promise not to recall the agency.

ID. — MEASURE OF DAMAGES. — The measure of damages for the breach of such a contract is the amount of the direct or approximate damages sustained by the agent by reason of the principal's depriving him of the benefits of the agency.

ID. — AMOUNT OF DAMAGES MUST BE PROVED. — In an action to recover damages for the breach of a contract, the amount of damages caused by the alleged breach is to be proved as a fact.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The action was brought to recover damages for breach of a contract of agency. The plaintiffs, Parke and Lacy, are San Francisco importers and dealers in machinery, etc., and the defendant, A. H. Frank, under the name of Frank & Co., is a manufacturer of planers and other wood-working machines in Buffalo, New York. For some years prior to February, 1882, the Berry and Place Machinery Company and their predecessors had been the sole California agents for the sale of Frank's machines, but no period of continuance of agency had ever been fixed. Besides defendant's agency, the Berry and Place Machinery Company were also agents for two other Eastern manufacturers, the Lehigh Valley Emery Wheel Company and R. W. Gardner & Co.

On January 26, 1882, the Berry and Place Machinery Company addressed to Parke and Lacy, the plaintiffs, a

written proposition to sell them for $2,700.47 its entire
stock of goods and office fixtures, scheduled at $2,714.51,
its lease of store and the good-will of its business, in-
cluding the three agencies above mentioned, provided
the Eastern principals should consent to the transfer of
their agencies, and of their consigned goods then on
hand unsold. On the same day, Parke and Lacy in-
dorsed on this proposal their acceptance of its terms.
The Berry and Place Machinery Company thereupon
wrote to Frank of the proposed transfer, and that it
depended on his consent. Not receiving a reply, the
Berry and Place Machinery Company, on February 3,
1882, telegraphed Frank at Buffalo, ordering two thou-
sand dollars' worth of new machinery, asking if the
same could be shipped immediately, and requesting a
reply to the previous letter. On the next day the Berry
and Place Machinery Company received two dispatches
from Frank in reply, one reading: "We consent to trans-
fer stock [on] condition you settle for all not transferred.
Can fill order two weeks." The second dispatch read:
"Will leave for San Francisco next Monday. Accept
your proposition."

Frank reached San Francisco about February 16th,
and held two interviews with plaintiffs at their place of
business between that date and February 20th, regard-
ing the proposed transfer. He insisted that the Berry
and Place Machinery Company should first pay him a bal-
ance due for machines sold and unaccounted for, and he
was told that he would be paid out of the money which
Parke and Lacy were to pay for the business. At the sec-
ond interview, on February 20th, he consented verbally
to the transfer, and promised to forward the two thousand
dollars' worth of machinery ordered February 3d, as soon
as possible.

Parke and Lacy immediately paid the Berry and Place
Company $2,400.47, in accordance with the arrangement
of January 26th, and the further sum of $964.57, freights

advanced on consigned goods still on hand, and took an assignment of the Berry and Place Machinery Company's lease, placing their salesman in charge of the premises, and of the consigned goods and stock in trade. Out of this money, Frank was paid by the Berry and Place Machinery Company what it owed him. As soon as defendant consented to the transfer, and at the same interview, he proposed to draw up a memorandum of agreement, to be signed by both plaintiffs and defendant, setting out the terms of agency. He sat down and draughted an agreement, which plaintiffs objected to, and they then drafted another in the form of a communication addressed to themselves, to be signed by him, to which he objected. After considerable discussion he began to sign his name, wrote his first two initials, "A. H.," then rose, said he was unduly excited, and would like to see Mr. Hendy, and then would come directly back and sign it. He put the paper in his pocket, left the store, and did not return. He left for the East next day, without again seeing plaintiffs, who did not hear from him again until March 3, 1882, when they received a dispatch from him, dated at Buffalo, saying: "I have concluded to give exclusive agency to Gregory" (meaning H. P. Gregory & Co., dealers in machinery at San Francisco). Plaintiffs shortly afterward brought this suit, claiming as damages the purchase-money paid the Berry and Place Machinery Company, expense of advertising, rent, and employees, loss of profits on the order for two thousand dollars' worth of machinery which was not filled, and damage to their business credit and reputation. At the trial, defendant introduced no evidence.

Plaintiffs recovered a verdict for $4,843.90. Defendant moved for a new trial, which was denied by the court upon the plaintiffs remitting all of the judgment in excess of three thousand one hundred dollars, for which last amount judgment was finally entered. Defendant brings this appeal from the judgment and order denying

a new trial. The further facts are stated in the opinion of the court.

*Charles P. Eells,* for Appellant.

The agency in the present case was not coupled with an interest, and was revocable at will. (Civ. Code, sec. 2356; *Barr* v. *Schroeder,* 32 Cal. 610; *Hartley's Appeal,* 53 Pa. St. 212; *Walker* v. *Dennison,* 86 Ill. 142; *Brown* v. *Pforr,* 38 Cal. 550; *Coffin* v. *Landis,* 46 Pa. St. 426; *Peacock* v. *Cummings,* 46 Pa. St. 434; *United States* v. *Jarvis,* Daveis, 287.)

*H. C. Newhall,* and *Eugene N. Deuprey,* for Respondents.

Though no definite period was fixed for the continuance of the agency, it is beyond dispute that it should last for a reasonable time. And though either party could terminate the agency at any time, yet he could not do so without fully indemnifying the other party for all loss. (Story on Contracts, sec. 192; Story on Agency, sec. 466; *Hodgson* v. *Anderson,* 3 Barn. & C. 482.)

McKinstry, J.—The main contention of the appellant in the court below was, that the contract of agency, not being for any definite term, was revocable at the will of the principal. Appellant claims that the rulings of the superior court, alleged to be erroneous, are exemplified by the portion of its charge to the jury which reads: "No period of time was mentioned. . . . . Where employment is proved, and no time is specified, the law presumes it shall last and endure for a reasonable time. What would be a reasonable time is a question for you to determine"; and by the refusal of the court, on request of defendant, to charge: "If the jury believe from the evidence that no definite time was agreed upon between plaintiffs and defendant for the contract of agency to endure, then said contract could be terminated by either party thereto at his option at any time."

The Civil Code provides: "Unless the power of an

agent is coupled with an interest in the subject of the agency, it is terminated, as to every person having notice thereof, by its revocation by the principal." (Sec. 2356.)

The interest which can protect a power after the *death* of the person who creates it must be an interest in the thing itself, and not an interest in that which is produced by the exercise of the power. (*Hunt* v. *Rousmanier*, 8 Wheat. 174.) It may be conceded that by the section of the Civil Code a revocation by the principal terminates the agency in every case where his death terminates it; and that the plaintiffs herein had no such interest in the subject of the agency as rendered the agency irrevocable. Nevertheless, if, for a valuable consideration, the defendant agreed not to revoke the agency for a reasonable time, and in view of the circumstances and nature of the contract a reasonable time could be ascertained, he had no legal right to revoke it during such time. "Although a letter of attorney depends, from its nature, on the will of the person making it, and may in general be recalled at his will, yet if he binds himself for a consideration, in terms, or by the nature of his contract, not to change his will, the law will not permit him to change it." (*Hunt* v. *Rousmanier*, 8 Wheat. 203.) In such case, if he fails to comply with his contract, he becomes liable to the agent as such.

Even if, however, it should be conceded that under the code the principal retains the right to revoke a power at his option, in every case where the agent is not vested with an interest in the subject of the agency, this would not render illegal a collateral agreement, whereby the principal should agree for a consideration not to exercise the power for a definite period, or for a reasonable time ascertainable. In case of such an agreement, if the agency is revoked by the principal, and the agent is thereby deprived of authority further to act as such, the principal is liable in damages by reason of the breach of his promise not to recall the agency.

Whether, therefore, it be considered that the defendant violated his contract by refusing to make consignments to the plaintiffs, or violated it by revoking the agency, he would be liable upon proper pleading. And in each case the rule of damages would be the same; that is, the plaintiffs would be entitled to recover the direct or approximate damages sustained by reason of defendant's depriving them of the benefits of the agency.

The court below did not err in refusing to give the instruction asked by defendant, because that instruction ignores all evidence tending to show that the defendant agreed not to revoke the agency. But the instruction given, while abstractly correct, suggests that, independent of any express promise, or implied promise arising out of the nature of the contract, the defendant had no legal right to put an end to the agency until the expiration of a "reasonable time."

There should be a new trial of the issue as to damages. It seems not infrequently to be lost sight of in the trial courts, that, in actions upon contracts, the *amount* of damages caused by an alleged breach is to be proved as a fact. It is impossible to ascertain from the statement for new trial upon what facts, taken as proved, the jury based their verdict for $4,843.90, or why the verdict was reduced by the court to $3,100, rather than to any other sum. We find no evidence which will sustain a judgment for either amount. This is not an action for a tort; the amount of the recovery was not to be left, upon general principles, to the "sound discretion" or "dispassionate judgment" of the jury. It is an action to recover the actual and proximate damages caused to plaintiff by a failure of defendant to perform his contract. Where there is a legal measure of damages, the jury must determine the amount as a fact; otherwise the law which so measures the damages would be of no avail. (1 Sutherland on Damages, 2.)

It is often said to be a paramount principle that the

person injured shall receive compensation commensurate with his injury, and no more. By reason of the breach of his contract, if he did break it, the defendant here became liable for the full amount of damages which resulted "naturally" (that is, in usual course of things) and proximately from the breach. These were to be proved with reasonable certainty. The particulars of damages were so far capable of ascertainment, and upon the plaintiffs was imposed the obligation of proving them. The matter should not have been left to the conjectures of jurymen.

The number of shipments or quantity of machinery to be sent was not fixed by the parties, and the plaintiffs very properly made no effort to establish the profits they might have made, during any definite period, had defendant complied with his contract. From the nature of the case such damages must have been purely speculative. But there is nothing in the record to indicate but that they could have proved, with reasonable certainty, what necessary expenses they were induced to incur, by reason of defendant's promise, for the purpose of carrying out their contract with him, as distinct from their contracts, if any, with R. W. Gardner & Co., and the Lehigh Valley Emery Wheel Company; or what special damage pleaded, if any, they sustained by reason of loss of profits upon orders of defendant for machinery which the latter refused to fill, in case the evidence showed such machinery had been ordered from them by responsible third parties, or would have been sold had it been received in due course.

The plaintiffs were not entitled to recover the difference between the manufacturer's prices for machines and the enhanced prices paid by them for the purchase of machines from other persons in the East. These were independent transactions, which were not the direct consequence of the breach of the defendant's agree-

ment, and cannot as matter of law be said to have been contemplated by him.

On the whole case, we think the interests of justice demand a new trial.

Judgment and order reversed, and cause remanded for a new trial.

SEARLS, C. J., and PATERSON, J, concurred.

Hearing in Bank denied.