JAMES MORGAN AND ANN MORGAN, Respondents, v. CHARLES. E. GIBSON, Administrator of GEORGE B. MURRAY, Appellant.

St. Louis Court of Appeals, November 11, 1890.

1. **Contract of Litigant to Pay Contingent Compensation:** EFFECT OF HIS DEATH. If the plaintiff in an action dies, after having employed another to assist in the prosecution of the cause, and having agreed to give to the person employed and the mother of the latter one-fourth of the proceeds, in the case of a recovery, the death of such plaintiff will not annul or revoke the contract thus effected.

2. ———: CONSTRUCTION OF CONTRACT. The contract referred to being one to pay one-fourth of the ultimate recovery, *held* that one-fourth of the net proceeds, after the deduction of the costs and expenses of the litigation, was intended.

3. **Administration:** LIMITATION OF TIME FOR PRESENTATION OF CLAIM. The statute, which limits the time for the presentation of a claim against a decedent to the two years ensuing after the grant of letters testamentary or of administration, does not apply to a claim which is contingent upon an occurrence which takes place after the lapse of the two years.

*Appeal from the St. Louis City Circuit Court.*—HON. DANIEL DILLON, Judge.

REVERSED AND REMANDED.

*Gibson, Bond & Gibson,* for appellant.

*T. K. Skinker,* for respondents.

ROMBAUER, P. J.—The questions presented by this record are purely questions of law arising upon conceded facts. The action is based upon a written promise of the defendant's intestate, and is one to recover from the defendant as administrator, for the joint benefit of

plaintiffs, the, sum of $1,253.29, alleged to be the one-fourth of an amount recovered by defendant as such administrator from the estate of one Rose. The trial court found in favor of the plaintiffs for the full amount claimed, and the defendant, appealing, complains that such finding is against the law under the conceded facts, and is excessive in amount.

Upon the trial of the cause the following facts were agreed upon :

" On the thirty-first day of March, 1885, George B. Murray, now deceased, but then residing in the city of Jacksonville, in the state of Illinois, wrote and sent to the plaintiff, James Morgan, residing in the city of St. Louis and state of Missouri, a letter in words and figures as follows :

" ' JACKSONVILLE, ILL., March 31, 1885.

" ' *Dear James :—*

" ' I think I shall never get to St. Louis again. If you will come up to see me, I will put that Rose case in your hands, and give you and your mother one-fourth of it, which will be at least one thousand dollars or more. I think with proper attention it can be gained. I think I have good evidence. If I could get there, I would gain the suit. I think Rose and Kern is trying to swindle me out of it. You can come up in the morning and down in the evening if you want, if you prefer. 504 is the number of my house on Prairy street. You never saw a more afflicted man,—not life enough left to write a few correct lines. James, this is for yours and your mother's benefit, not mine. I care nothing about the money. Write, let me know if you will come, and when. Yours truly,

" ' GEO. B. MURRAY.

" ' This is for yours and your mother's benefit ; not that I care anything about it ; I think when I am gone, if not attended to, it will fall into some hands I do not care to have it,

" 'Buy a round-trip ticket, costs $4.90, bridge fifty cents.'

" In answer to this letter, on the second day of April, 1885, the said plaintiff went from St. Louis to Jacksonville, at an expense to himself of $5.40, and at Jacksonville visited and saw said Murray at his own home, and remained with him one day. The said plaintiff and said Murray consulted together concerning the claim of the said Murray against the estate of one James B. Rose, then deceased. At said interview said Murray requested said plaintiff to render such assistance as he could, in the collection of said claim, to Kerr & Kerr, attorneys at law in the city of St. Louis, who had already been employed by said Murray to prosecute said claim. Said plaintiff agreed to render such assistance to said Kerr & Kerr.

" Thereafter, said Murray caused to be written and sent, and said plaintiff received from said Murray, three letters, whereof the following are copies:

" 'JACKSONVILLE, ILL., April 14, 1885.
" '*Dear James :—*

" 'I received your letter a day or two ago, informing me the suit was not brought in the probate court. As you think it would be best it should be put in the probate, I think it would be best to inform Mr. Kerr what your reasons are for changing it. I put the case in your hands, James, to do the best you can for all interested. Consult with Mr. Kerr; inform him of what you have heard, and I think he will agree with you. If he thinks it best to take the Boatman deposition, I will send the money for that. I think it is useless to take Rose's deposition; you know enough of what he says.

" 'I am not as well as I was when you were here. Write soon, Give my love to your (?) and the girls.
" ' Yours truly,
" 'GEO. B. MURRAY.

" 'You and Kerr consult over the case, James; I shall never be able to get there. I have had two bad attacks since you were here. How would it do to tell Kerr? Kerr thinks he would get no commissions, unless it was allowed by the probate court. I should think you have evidence enough with John letter; I gave them to Kerr to prove enough, but do the best you can.

" 'If Kerr thinks best to take the Man deposition in France, let me know.

. " 'Will write Kerr in a few days.'

" 'JACKSONVILLE, May 2.

" '*Dear James :—*

" ' Your letter received some days ago. If you think best to have Mr. Clendenninn's deposition taken, do so. What will be the cost? Have I to pay it? Mr. Murray is not so well as when you were here; he thinks he grows weaker every day. Hope you will attend to everything.

" ' Write, and let me know the amount.

" ' Your,

" 'S. M. MURRAY.

" 'James, never expect to see me again; I am getting weaker.'

' 'JACKSONVILLE, May 7.

" '*Dear James :—*

" ' I received a letter yesterday from Mr. Kerr, asking for money to pay for taking depositions. I find I have not as much as I thought I had. If you and Mr. Kerr will advance it, you can take it out of those notes, not assigned to John B. Rose. If you do not gain the suit, those notes will pay all the costs.

" ' Yours truly,

" ' GEO. B. MURRAY.

" ' I think, James, it would be a good thing for you not to let the suit drop for the want of a few dollars, when there is enough to pay all depositions.

" ' Your friend,

" ' GEO. B. MURRAY.

" ' My time is near at hand. Hope to hear from you soon.'

" The postscripts of said letters of May 2 and 7 are in the handwriting of Sarah M. Murray, wife of said Geo. B. Murray. The plaintiff, James Morgan, and said George B. Murray were blood relations. The plaintiff, Ann R. Morgan, is the mother of her coplaintiff. After the thirty-first day of March, 1885, letters, whereof the following are copies, were sent by plaintiff, James Morgan, to said George B. Murray, and were by him received :

" ' ST. LOUIS, April 10, '85.

" ' *Cousin Baker.*

" ' DEAR SIR :—I find, upon inquiry, that the suit against Kern was brought, as I had supposed, *not* in the probate, but in the circuit, court. I still think the surest, quickest and least expensive way to get your money is to dismiss the suit in the circuit court and file your claim in the probate court.

" ' Yours truly,

" 'JAS. MORGAN.

" ' ST. LOUIS, April 25, '85.

" ' *Cousin Baker.*

" ' DEAR SIR :—I have had several conversations with Mr. Kerr, and, after going over the whole ground with him, think he has adopted the proper course in this case. Mr. Kerr showed me a letter from Mr. Clendenninn, whose testimony is very important ; in fact, I think it establishes your claim beyond a doubt. It will be necessary to get Mr. Clendenninn's deposition, as he is in France, and it would also be well to get Bob Rose's deposition. I think there is very little doubt about your winning this suit. You had better have Mr. Kerr attend to this Clendenninn matter at once.

" ' Yours truly,

" 'JAS. MORGAN.

" ' If you have any letters of John B. Rose that have any bearing on this matter, send them at once to me, or Mr. Kerr.'

" ' St. Louis, December 10, 1884.

" ' *Cousin Baker.*

" ' Dear Sir :—I send per express the cocoa you ordered. I could not get Baker's, and have to send this, which is said to be as good as any in the market. I never heard Minnie express herself on the subject of the money of yours in John Rose's hands, and I know nothing of this matter. Julian and Bob both expressed themselves as being aware that the money was yours, and intended doing everything in their power to have it returned to you.　　　Yours truly,

" 'Jas. Morgan.' "

In addition to these facts, the plaintiffs proved that a suit had been instituted in the name of George B. Murray against Rose's administrator in October, 1884, in which judgment was recovered for $5,013.17 on April 27, 1888, in favor of the defendant, as administrator : that the administrator of Rose took an appeal from such judgment, and that it was affirmed by the supreme court November 4, 1889. The plaintiff also gave evidence tending to show that, during the pendency of the suit, he rendered some services of value in connection with its conduct, and that Murray, in April, 1885, had written a letter to the attorney conducting the suit, requesting him to act in conjunction with the plaintiff, James Morgan ; that he left the business in their hands and would agree to whatever they thought best.

The defendant gave evidence tending to show that George B. Murray died prior to January 23, 1886, on which day letters of administration on his estate were granted to the defendant ; that immediately thereafter he gave the statutory notice of appointment, and that plaintiffs never exhibited any claim against Murray's

estate to him, until the institution of this suit, which was more than two years thereafter.

The defendant contends that, this being all the evidence in the case, the judgment was erroneous as a matter of law for the following reasons : The plaintiffs cannot recover in this action the value of services rendered by James Morgan, because suit is not brought for the reasonable value of his services, and because there is no evidence of what such reasonable value is. Even if these obstacles were out of the way, the evidence shows that the claim was not exhibited within two years after the grant of letters of administration, and is, therefore, barred by the statute. On the other hand, if the plaintiff James sues for a stated compensation, as agent of the deceased Murray, he cannot recover, because his agency was revocable, and was revoked by the death of his principal. The defendant further contends that, even if plaintiffs were entitled to recover, yet the court erred in rendering judgment in their favor for one-fourth of the gross proceeds realized from the prosecution of the claim, instead of confining the recovery to one-fourth of the net proceeds.

The plaintiffs contend that the finding is supported under the evidence on one of two theories. Either the letter of March 31, 1885, was an offer to plaintiffs to transfer to them an undivided one-fourth interest in the Rose claim, upon James' coming to Jacksonville, which offer was accepted by James in going to Jacksonville, and conferring with his relative ; or else that the letter was an offer of employment for a contingent compensation, and could not be revoked so as to affect the compensation while the plaintiff James did all that was required of him. In neither event is the claim barred by limitation, as the cause of action thereon against the defendant only accrued when the proceeds of the judgment against the Rose estate were paid over to him, an event which took place more than two years after the grant of letters of administration to the defendant, and

which preceded the institution of the present suit but a few days.

Both parties concede that the letter of March 31, 1885, is the foundation of the plaintiffs' claim. It thus becomes important to ascertain the true meaning of the offer contained in that letter, and the nature of the contract formed by its acceptance. That the offer contained in that letter was not one to assign to the plaintiffs one undivided fourth of the claim against Rose's estate, for the mere consideration of the journey of plaintiff James to Jacksonville at his own expense, seems to be obvious from the context of the letter as a whole, from the situation of the parties, and from the interpretation put upon it by the parties themselves, then and thereafter, as evidenced by their correspondence. "I will put that Rose case in your hands and will give you and your mother one-fourth of it," means that "I will place the pending suit against Rose under your direction, with the understanding that, in case of recovery, one-fourth of the proceeds should belong to your mother and yourself." The fact that the writer adds, "this is for your and your mother's benefit not mine," merely indicates that, beyond the advantage that the writer intended to derive, he had also a benevolent object in view.

That such was the interpretation put upon that offer by both parties, further appears from the fact that, when plaintiff James went to Jacksonville, he was requested by Murray to render to Murray's attorneys such assistance, as he could, in the collection of said claim; that he agreed to do so; and that, in all subsequent correspondence between the parties, the claim is mentioned as Murray's claim, and Murray's money. It also appears from the plaintiff's petition in this suit, which avers that the offer was "to put in the hands of said plaintiff the collection of said money, and, when the same should be recovered, to pay to the plaintiffs one-fourth of the amount that would be recovered."

The further fact, that the action against Rose's estate thereafter was prosecuted in the name of Murray alone, without joining the present plaintiffs as coplaintiffs, is entitled to no weight, as the action was already pending when the offer was made, and, under our statute, in case of the transfer of an interest in a pending action, the action is properly continued in the name of the original party. R. S. 1879, sec. 3671.

But, while we are clearly of opinion that the plaintiffs' first contention is untenable, it does by no means follow that they lost by the death of Murray, and by their failure to assert the claim within two years after the grant of letters of administration, their claim to one-fourth of the amount ultimately recovered. The argument of the defendant on that branch of the case is based on a misconception of the law.

It was decided in *Hunt v. Rousmanier*, 8 Wheat. 174, which is a leading case on that subject, that the *power to do one thing in the name of another* expires with the death of the party granting it, although it be irrevocable on its face, and given for a valuable consideration, unless it be coupled with an *interest in the thing* to which it relates. The reasons for the rule and the exception are clearly stated by the pre-eminent jurist, who delivered the opinion, thus: "The interest or title in the thing, being vested in the person who gives the power, remains in him, unless it be conveyed with the power, and can pass out of him only by a regular act in his own name. The act of the *substitute*, therefore, which, in such a case, is the act of the principal, to be legally effectual, *must be in his name*, must be such an act as the principal himself would be capable of performing, and which would be valid if performed by him. Such a power necessarily ceases with the life of the person making it. But if the interest or estate passes with the power, and vests in the person by whom the power is to be exercised, such person acts in his own name. The estate, being in him, passes

from him by a conveyance in his own name.    He is no longer a substitute, acting in the place and name of another, but is a principal acting in his own name, in pursuance of powers which limit his estate.    The legal reason which limits a power to the life of the person giving it exists no longer, and the rule ceases with the reason on which it is founded.    The intention of the instrument may be effected without violating any legal principle.''

The principles thus announced were applied in *State ex rel. v. Walker*, 88 Mo. 279, 284, to a case, wherein a public agency was terminated by a repeal of the law creating it.    The law expiring by repeal, the authority of the agent to act on behalf of the state was necessarily gone, because, as the court said, ''his acts were to be done in the name of the state and not in his own name.''    The mere fact that the agent's compensation is contingent, and that the failure of the contingency is due to the death of the principal, and not to the agent's default, is immaterial.

If, in the case at bar, no ultimate recovery had ever taken place, owing to the failure of the administrator to prosecute the case with effect, or to prosecute it at all, then the plaintiffs certainly could not have recovered in this form of action, if at all; but, as it is, the case is simply one, where one, for a sufficient consideration, undertakes to do a thing for a contingent compensation, and where the contingent event, on which the compensation depends, has actually occurred.    *Wylie v. Coxe*, 15 How. (U. S.) 415; *Price v. Haeberle*, 25 Mo. App. 201.

Nor do the facts of this case bring it within the class of cases, where the services to be rendered are of a personal nature, depending on the life of the promisor. *Yerrington v. Greene*, 7 R. I. 589; *Dickinson v. Calahan*, 19 Pa. St. 227, and other cases cited by appellant are of that class, and, therefore, inapplicable.    It was not in contemplation of the parties here that the pending

ing suit should abate upon the death of the promisor, but quite the contrary, as the promise itself was in contemplation of an early dissolution on part of the promisor.

The special statute of limitation does not bar this proceeding. Before the final recovery, which took place after the expiration of two years from the grant of letters, the plaintiffs had no cause of action. When the very existence of the future liability is contingent and uncertain, the claim is not covered by the provisions of sections 205 and 206 of the Revised Statutes of 1879, providing for the allowance of demands not yet due. *Kavanaugh v. Shaughnessy*, 41 Mo. App. 657, decided at the present term of this court. Several decisions of the supreme court go much further than it is necessary for us to go in this case, in holding the statutory bar inapplicable to cases of this character. *Jameson v. Jameson*, 72 Mo. 640 ; *Tenny v. Lasley*, 80 Mo. 664.

The only remaining question is, whether the judgment rendered in favor of plaintiffs is excessive in amount. The entire gross recovery was $5,013.17, and the judgment was for exactly one-fourth of that sum, without making any allowance for amounts expended by the administrator in the prosecution of said claim, amounting to $1,149.60. As above stated, we find the contract between the parties to have been not an assignment of one-fourth of the claim, but a promise to pay one-fourth of the ultimate recovery. This being the case, it could not have been in the contemplation of the parties, that, in case the costs and expenses of the litigation would consume the entire fund, the plaintiffs should still have an allowable demand against Murray's estate to the extent of one-fourth of the gross recovery ; yet such would be the logical result of plaintiffs' present contention. By one-fourth of the ultimate recovery, in our opinion, one-fourth of the net recovery is meant. It results that the judgment is excessive

to the extent of $287.40. The additional amount of three hundred dollars, expended by Mrs. Murray, cannot be taken into account, as the record fails to show any warrant for such expenditure by her.

If the plaintiffs will, within ten days after the filing of this opinion, remit of their recovery the sum of $287.40 in this court, the judgment will be affirmed ; otherwise it will be reversed, and the cause remanded to the circuit court with instructions to take an account of the amounts necessarily expended in the prosecution of the claim by persons authorized to make the expenditure, and, after deducting such expenditure from the gross amount recovered, to render judgment in favor of plaintiffs for one-fourth of the residue. All the judges concurring, it is so ordered.