[Civil No. 1235.   Filed May 2, 1912.]

[123 Pac. 306; 39 L. R. A., N. S., 1187.]

W. E. DUMONT, Appellant, v. HENRY E. HEIGHTON, Administrator of the Estate of CHAS. H. FERRY, Deceased, Appellee.

1. MASTER AND SERVANT—EMPLOYMENT CONTRACT—TERMINATION—DEATH OF EMPLOYER.—Where the work to be done under an employment contract at a stipulated monthly salary was merely the annual assessment work required by law upon twelve mining claims, together with the care of the camp and other property, and was not to be done under the personal supervision of the employer, the contract was binding on the employer's estate, and was not terminated by his death.

2. MASTER AND SERVANT—EMPLOYMENT CONTRACT—TERMINATION—DEATH OF EMPLOYER.—A contract employing plaintiff to do certain work upon property taken into his possession is not terminated at the death of the employer by Civil Code 1901, paragraph 1825, which provides that the executor or administrator must take into his possession all the decedent's estate; the possession of the employee being that of the employer, and, after his death, that of his administrator.

APPEAL from a judgment of the District Court of the First Judicial District, in and for the County of Pima. John H. Campbell, Judge.   Reversed and remanded.

The facts are stated in the opinion.

Mr. Mark A. Smith and Mr. Leslie C. Hardy, for Appellant.

Mr. Selim M. Franklin, for Appellee.

ROSS, J.—The plaintiff in this case instituted this suit against the defendant, administrator of the estate of Chas. H. Ferry, deceased, on a contract for wages after the term of the contract had expired, alleging a breach thereof by the administrator.   The contract was for one year's services by the plaintiff doing assessment work on twelve mining claims, and taking the proper care of camp and other prop-

erty belonging to deceased Ferry, for which services the plaintiff was to receive $150 per month, beginning January 1, 1910, and ending January 1, 1911. Ferry was to furnish all camp tools and explosives within reason. On the second day of May, 1910, Chas. H. Ferry died. The plaintiff was discharged by the administrator and dispossessed of the mines and improvements of the deceased on the twenty-third day of May, 1910. He sues for ten months' salary, alleging his damages at the stipulated wages of $150 per month or $1,500. A jury was impaneled in the lower court, and the plaintiff and defendant introduced their evidence, but the jury was discharged, without rendering any verdict, upon the following stipulation:

"It is hereby stipulated by the respective parties in the above-entitled action that the jury be discharged, and that the cause be submitted to the court for its determination; that if the court find that the contract of employment alleged in plaintiff's complaint terminated with the death of the defendant Ferry that the plaintiff recover from the estate of the said Ferry the sum of ninety-three ($93.00) dollars; and that if said contract survived the death of the said Ferry that he recover from the estate the sum of twelve hundred thirty-eight ($1,238.00) dollars, together with his costs, and the interest upon the respective amounts recovered.

"Dated this 12th day of June, 1911.

"MARK A. SMITH,
"LESLIE C. HARDY,
"Attorneys for Plaintiff.
"SELIM M. FRANKLIN,
"Attorney for Defendant."

The lower court, agreeable to such stipulation, thereafter "reached the conclusion that as a matter of law the contract terminated by the death of Ferry or rather by the demand made by the administrator upon Mr. Dumont for the possession of the property," and rendered judgment in favor of the plaintiff for $93. The appellant (the plaintiff below) assigns nine errors in the court below. We set forth two of such assignments which present the only question to be decided by us; the other matters, as we conceive them, being concluded by the above stipulation. Those two errors are, first, that "the court erred in finding and holding that the

contract of employment terminated, as a matter of law, by the death of the master, Chas. H. Ferry, for the reason that as a matter of law the said contract did not terminate with the death of the master"; and, second, in "holding that the contract of employment terminated by the demand made by the special administrator upon the appellant."

The stipulation entered into by the parties in the course of the trial leaves but one question to be decided, and that is as to whether this was a personal contract that terminated with the master's death. The contract *in haec verba* is as follows: "Apropos of our conversations and previous letters I now, after consultation with Mr. Ferry, am able to state to you here what will be expected of you in the way of work and care of camp and salary to be paid. There are twelve (12) outlying claims in which Mr. Ferry and I are equal owners. These claims he agreed to do the location and assessment work for his interest, being that I discovered them. You will be expected to do the assessment work on these twelve claims, and take proper care of camp and other property belonging to Mr. C. H. Ferry, for which he is willing to pay you one hundred and fifty ($150.00) per month, beginning Jan. 1st, 1910, to Jan. 1, 1911. You can use camp tools and Mr. Ferry is willing to furnish all explosives within reason. The law requires $100.00 worth of work on each and every claim and whether it is done on one or for a group there must be $100.00 worth of work done for every claim. This work will require your affidavit. You can begin your assessment work now or any time during the year, but you ought to begin in time." The plaintiff in his complaint alleges that under the contract it became his duty to take "possession of all the property herein mentioned and described and care for or cause to be cared for the same, and to prevent injury or waste thereof, . . . to do or cause to be done within the year beginning January 1st, 1910, the annual assessment work on twelve of said mining claims, said Ferry to furnish all tools, powder, caps, fuse, and things necessary to perform such work." And further alleges that he did thereafter take possession of such property. Freeman in his notes to *Hawkins* v. *Ball's Admr.*, 68 Am. Dec. 755, says: "The law presumes that the parties to a contract bind not only themselves, but their personal representatives.

A personal representative is therefore liable on all the contracts of the decedent which were broken in his lifetime, and, except those contracts whose performance requires his personal skill and taste, on all those that are broken after his death.'' Sustaining his statement of the law he further quotes from 2 Chitty on Contracts, eleventh American edition, 1406: "An executor or administrator is liable, in general, to the extent of the assets which come to his hands to be administered, upon all the contracts of the deceased remaining undischarged at his death. Accordingly, the executor or administrator is liable, so far as he has assets, for debts of every description due from the deceased, either debts of record, as judgments, statutes, or recognizances, or debts due on special contracts, as for rent, or on bonds, covenants, or the like, under seal, or debts on simple contracts as notes unsealed and promises not in writing, either expressed or implied. In this all authorities agree''; citing many cases. The author also says in the same note: "Contracts strictly personal in their nature determine upon the death of the party by whom the personal service is to be performed. In such cases the personal representatives of the deceased contractor are not liable for the performance of his contracts. This is the only exception to the rule that the personal representative of a decedent is bound to perform his contracts. The exception itself is very generally admitted, but the difficulty arises in determining what contracts come within it''; citing authorities. "The question, after all, is one to be determined by ascertaining the intention of the parties. And if from the construction of the contract it appears that the intention of the parties is that the contractor alone in person is to perform it, and that it is not to be performed by any other person, then the contract is to be regarded as personal within the meaning of the exception.''

In this case Ferry owned some mining claims upon which he wanted the assessment work done for the year 1910. He also owned some houses and improvements either on or adjacent to these twelve claims of which plaintiff was to be the caretaker. In one of the houses there was a small stock of goods, and the evidence shows that the plaintiff was to look after that also. Ferry himself lived in New York, and was on the ground only occasionally, and then for the general

purpose of consulting his superintendent and taking a general survey of his properties. His purpose in making this contract with the plaintiff, of course, was to have the assessment work done so as to preserve his rights and to have the improvements cared for and protected. The contract for services was let in full view of these circumstances. It was a matter of little concern to Ferry as to who should do the assessment work, providing it was done under the terms of the contract. The part of the contract with reference to looking after and caring for the property did not necessarily call for a person with peculiar skill, ability or taste. It seems to us that it must have been the intention of Ferry, when he entered into this contract with plaintiff, to bind himself and his estate to the complete fulfillment of its terms. We do not think that the conclusion at which we have arrived in this case is at variance with the decision of the court in the case of *Lacy* v. *Getman,* 119 N. Y. 109, 16 Am. St. Rep. 806, 6 L. R. A. 728, 23 N. E. 452, cited by appellee as the leading case on this subject. In the Lacy-Getman case the testator, who had employed Lacy to do appropriate and ordinary work for a period of one year on his farm, in his will bequeathed a life estate in the farm to his widow, and the house and control of all his personal property whatsoever in the house and on the farm during the term of her natural life. The court in that case made this observation: ''It is obvious at once that an element has come into the case as now presented which was not there when the general term first held that the contract survived. It now appears that the executrix could not have performed her side of the contract at all after the death of McMahan by force of her official authority, because she had neither the possession of the farm or personal property upon it, and no right to such possession during the life of the widow. She had no power to put her servant upon the land, or employ him about it, and in her representative character she had not the slightest interest in his service, and could derive no possible benefit from it. . . . We have, then, the peculiar case of a contract made to work for McMahan, and under his direction and control, which could not be performed because of his death, transmitted into a contract to work for Mrs. Getman upon a farm which she did not possess, and had no right to enter.'' And

the court further on states: "And so it must be conceded that the death of the servant, employed to render personal services under the master's daily direction, dissolves the contract." As stated, the services to be rendered by the plaintiff in this case were not to be under the personal directions or supervision of Ferry. Indeed, it may be said that the plaintiff was placed in absolute charge and control to do the assessment work in any manner he chose within the time limited, and to look after and care for the improvements without any directions or instructions of a daily or personal nature from Ferry. In the case of *Zinnell* v. *Bergdoll*, 19 Pa. Super. Ct. 508, cited by appellee, after discussing the facts in relation to the employment and services of the plaintiff by the deceased, the court said: "There being no evidence from which a contract to render services upon the one hand and pay for them upon the other for a longer period than each current month upon which the parties entered could have been implied, it was error to submit the case to the jury in this manner." Thus it will be seen that in this case there was a lack of contract.

The appellee also insists that the contract sued on in this case was terminated by the death of Ferry for the reason that our statute (Civ. Code 1901, par. 1825) provides that "the executor or administrator must take into his possession all the estate of the decedent, real and personal, and collect all debts due to the decedent or to the estate." The possession of the plaintiff was the possession of Ferry, and, upon the death of Ferry and the appointment of an administrator, by operation of law, the possession was transferred to the administrator, and therefore the possession of the plaintiff was, in fact, the possession of the administrator. The administrator doubtless would have had the right to discharge plaintiff from the performance of his contract for any neglect of duty or any willful conduct injurious to the interests he represented, or for dishonesty, or for refusal to permit the administrator to exercise his powers and duties as administrator in any manner not in conflict with the terms of his contract.

We think the lower court committed error in not giving judgment to the appellant for the sum of $1,238, together with his costs and interest.

The case is remanded to the superior court in and for Pima county, with directions that judgment be entered for appellant for said sum of $1,238, together with costs and interest, the judgment to be paid in the due course of the administration of the estate.

FRANKLIN, C. J., and CUNNINGHAM, J., concur.

Application for rehearing denied.

———

NOTE.—The cases upon the question of the termination of a contract of employment by the death of one of the parties are collected in a note in 21 L. R. A., N. S., 914.

Apparently the only case upon the question, decided since the publication of that note, is *Estate of McPhee,* 156 Cal. 335, 104 Pac. 455, in which it is held that men employed to fell trees and make them into ties at a certain price per tie, without any specific number of trees being contracted for, had no interest in the timber, and the employment was ended by the death of the employer.

As to liability of employer for wages of employee for unexpired contract period, where employer goes out of business, see note in 6 Ann. Cas. 236.