[Sac. No. 4948. In Bank.—March 24, 1936.]

EDWIN P. STOLL, Appellant, v. JOHN T. STOLL et al., Respondents.

White, Miller, Needham, Harber & Mering for Appellant.

Downey, Brand & Seymour, Ralph H. Lewis and Frederic R. Pierce for Respondents.

THOMPSON, J.—This cause was transferred to this court, after decision by the District Court of Appeal, Third Appellate District, in order that we might give further consideration to the important question of whether liability for damages exists in the case of the termination of a contract for personal services for a time certain by the incompetency or death of the principal. With two or three slight changes in the text,

which are noted by the punctuation, we adopt the statement of facts from the opinion of the District Court of Appeal, as follows:

"The plaintiff has appealed from a judgment which was rendered against him pursuant to an order sustaining separate demurrers of the defendants, and denying leave to amend a complaint for damages based on the termination of an employment to manage the business and properties of John T. Stoll for a definite period of time at a fixed salary.

"The complaint alleges that for many years the plaintiff had been employed as Division Manager of the Remington Arms Company, with headquarters at San Francisco, at a salary of $350 a month, and that his prospect for continued services with that company was excellent. He was an experienced business manager. John T. Stoll, his father, who was aged, was possessed of a business and valuable properties at Sacramento which required the attention of an experienced manager. The family of John T. Stoll consisted of his wife, Jennie T. Stoll, who was not the mother of his children, and four sons, besides the plaintiff. John T. Stoll persuaded his son Edwin to give up his employment with the Remington Arms Company and abandon his prospects of advancement with that corporation to become the manager of his business and property at an agreed salary of $350 a month until 'final distribution of the estate of said second party (John T. Stoll) has been made'. That contract was executed October 26, 1929. It also provided that in consideration of the employment the plaintiff should receive from the estate of his father at least his proportionate share as an heir at law. That contract was signed and approved by the wife of John T. Stoll and by each of his sons in which they specifically 'agree to be bound by the terms and conditions thereof in so far as said terms and conditions affect the rights and interest of each or any of us, and each hereby agrees . . . that such employment shall continue for the period provided for in said agreement and at the compensation therein provided with all the powers, authority and duties therein provided'. . . .

"The plaintiff thereupon abandoned his employment with the Remington Arms Company and efficiently managed the property and business of his father until January, 1932, for

which service he was paid the sum of $350 a month according to the terms of the contract. On December 2, 1931, John T. Stoll was adjudged to be incompetent, and upon proceedings duly had, the defendant, Capital National Bank, was appointed and qualified as guardian of his estate. In the former case of *Capital National Bank of Sacramento* v. *Stoll*, 220 Cal. 260 [30 Pac. (2d) 411]," this court "held that the employment of this plaintiff, as agent, was terminated by the subsequent incompetency of John T. Stoll, under the provisions of sections 1996 and 2355–2356 of the Civil Code. In the last mentioned case it was specifically held that the contract, as distinguished from the mere agency which it created, remains in full force, and that 'whatever right the agent may have *to recover damages* or to protect his expectant interest in the estate is not involved in this action' ". "We think, however, that the court was in error in declaring the *contract* terminated. The contract not only provides for the employment of defendant as agent, but also contains the agreement not to reduce his expectant share of the estate. If the consideration is adequate and the contract otherwise fair and reasonable, and the defendant is willing to perform and has not been guilty of any improper performance, we, see no reason why this part of the agreement may not be valid and subsisting, and binding on the estate of the incompetent."

The language quoted from our former opinion is based upon the conception that, although the power exists to terminate a contract of agency for a definite term, when that power is not coupled with an interest, yet the right to terminate is essentially different, and where the contract is supported by a valuable consideration and the power is exercised contrary to the right, the principal is liable for the direct and proximate damages caused by revoking the authority of the agent. Thus it is said in *Parke* v. *Frank*, 75 Cal. 364, 368 [17 Pac. 427]:

"Even if, however, it should be conceded that under the code the principal retains the right to revoke a power at his option, in every case where the agent is not vested with an interest in the subject of agency, this would not render illegal a collateral agreement, whereby the principal should agree for a consideration not to exercise the power for a definite period, or for a reasonable time ascertainable. In case of

such an agreement, if the agency is revoked by the principal, and the agent is thereby deprived of authority further to act as such, the principal is liable in damages by reason of the breach of his promise not to recall the agency.

"Whether, therefore, it be considered that the defendant violated his contract by refusing to make consignments to the plaintiffs, or violated it by revoking the agency, he would be liable upon proper pleading. And in each case the rule of damages would be the same; that is, the plaintiffs would be entitled to recover the direct or approximate [proximate] damages sustained by reason of defendant's depriving them of the benefits of the agency."

This case has been followed by an unbroken line of authorities. For example, we find the following in *Roth* v. *Moeller,* 185 Cal. 415, 418 [197 Pac. 62]:

"The effect of defendant's revocation of the agents' authority is the paramount point to be determined in passing upon the correctness of the judgment of nonsuit. Save in the case of an agency coupled with an interest, a principal has the *power* to revoke an agent's authority at any time before the agent has completed performance. (Civ. Code, sec. 2356; *Flanagan* v. *Brown,* 70 Cal. 254 [11 Pac. 706]; *Parke* v. *Frank,* 75 Cal. 364 [17 Pac. 427]; *Blumenthal* v. *Goodall,* 89 Cal. 251 [26 Pac. 906]; 1 Cal. Jur., p. 705.) A principal may, however, curtail his *right* of revocation by contracting not to revoke the authority for a definite time. If the principal does so contract, he still retains the power to terminate the agency, and the termination cannot be prevented by the agent, but a revocation of authority within the designated period renders the principal liable for damages for the violation of a legal right of the agent, just as in the case of any other breach of contract. (*Parke* v. *Frank, supra; Blumenthal* v. *Goodall, supra; Ropes* v. *John Rosenfeld's Sons,* 145 Cal. 671 [79 Pac. 354]; *Sill* v. *Ceschi,* 167 Cal. 698 [140 Pac. 949]; *Boehm* v. *Spreckels,* 183 Cal. 239 [191 Pac. 5]." See, also, *Brown* v. *National Electric Works,* 168 Cal. 336 [143 Pac. 606].)

The foregoing makes manifest what was intended by the language employed in the former opinion. It simply means that, although the agency was terminable, yet the appellant, upon proof of the consideration and his willingness

to perform, was entitled to be made whole. According to the allegations, the parties deliberately (the plaintiff only after great persuasion had given up his salary and prospects) entered into the contract, and it would be unconscionable, upon proof of those facts, to hold that plaintiff is without a remedy.

The contention of respondents that the revocation was by operation of law is unavailing. In 1 Mechem on Agency, second edition, at page 476, section 668, we read:

"Where, however, the transaction is more than the mere creation of a power, and amounts to a mutual and binding contract of employment for a definite time, or the performance of a specific act, the effect of the principal's death upon the continuance of the contract depends upon a variety of considerations. Most contracts for personal services so evidently involve personal considerations and are so clearly dependent upon the continuance of the lives of the parties, as to be fairly subject, *where no express provision is made,* to the implied condition that the death of the principal or master as well as that of the agent or servant shall terminate the contract without liability.

"But, on the other hand, there may be contracts of employment which involve no such considerations, and contemplate merely the accomplishment of certain objects which are not dependent upon the life of the principal. Here the contract liability may survive even though the power to act may not; the contract may impose upon the representatives of the principal the obligation to renew or recognize the authority or to permit it to be exercised; and damages for the breach of the contract may be recovered against the representatives of the deceased principal if, being in a situation to permit the performance of the contract, they refuse so to recognize it." (Italics ours.)

Examples and illustrations of such recoveries may be found in *Dumont* v. *Heighton,* 14 Ariz. 25 [123 Pac. 306, 39 L. R. A. (N. S.) 1187], *In re Grapel* v. *Hodges,* 112 N. Y. 419 [20 N. E. 542], *Wylie* v. *Coxe,* 56 U. S. (15 How.) 415 [14 L. Ed. 753], *O'Meara* v. *Green,* 25 Mo. App. 198, and *Morgan* v. *Gibson,* 42 Mo. App. 234. It is obvious that the incompetency and the death of the principal are analogous and the right of the plaintiff determined by the same legal principle in either event. It follows from what has been said that plaintiff is

entitled to maintain an action for damages as against the representative of the deceased.

We may now inquire whether the action is maintainable against Jennie T. Stoll in her individual capacity. As has been pointed out heretofore, she, together with all of the heirs, agreed to be bound by the terms of the agreement and for the period provided therein. In effect, this portion of the agreement bound Mrs. Stoll and all of the heirs to take every legitimate step necessary to the complete protection of plaintiff in his contractual rights. By way of example, it may here be noted that plaintiff might have been nominated as administrator of the estate of John T. Stoll, in order to accomplish the evident purpose of the parties. Having assumed the burden of the contract and thereby induced plaintiff to enter into the contract, Mrs. Stoll may not now repudiate the obligation without being answerable therefor. The allegations of the complaint are to the effect that Jennie T. Stoll demanded that the services of plaintiff be terminated, and that she, in conjunction with the other defendants, prevented the performance by plaintiff of the terms of the contract. It follows that the demurrers of Jennie T. Stoll, individually and as administratrix, were improperly sustained.

However, it is manifest that no liability attached to the defendant Capital National Bank in its capacity as a bank. Whether it was liable in its capacity as guardian of the estate is not now material to the case, for the reason that any claim against the estate of John T. Stoll must now be pressed against the administratrix of the estate. Hence the demurrers of the Capital National Bank, a corporation, and as guardian of the estate of John T. Stoll, an incompetent, were not erroneously sustained.

The judgment in behalf of the bank individually and as guardian is affirmed, but that portion which dismisses the action against Jennie T. Stoll and Jennie T. Stoll, as administratrix of the estate of John T. Stoll, is reversed.

Shenk, J., Curtis, J., Langdon, J., Seawell, J., and Waste, C. J., concurred.

Rehearing denied.