[Civ. No. 8380.   Third Dist.   July 13, 1954.]

EDITH R. BAUMGARTNER, Respondent, v. N. T. MEEK et al., Appellants.

Francis H. Frisch and Laura O. Coffield for Appellants.

Riggins, Rossi, King & Kongsgaard for Respondent.

PAULSEN, J. pro tem.*—This is an appeal from a judgment of $15,000 and interest upon the verdict of a jury in an action to recover upon a real estate brokerage listing. The document signed by the parties conformed to the California Real Estate Association standard form and so far as material to this appeal reads as follows:

"In consideration of the services of W. B. Griffiths Company, hereinafter called broker, I hereby list with said broker, exclusively and irrevocably, for the period of time beginning January 8, 1951 and ending March 1, 1951, the property situated in the Berryessa Valley, County of Napa, California, described as follows, to-wit: [Description] and I hereby grant said broker the exclusive and irrevocable right to sell said property within said time for Three Hundred Thousand - - - - 00/100 ($300,000.00) Dollars . . .

"I hereby agree to pay said broker as commission five (5%) per centum of the selling price should, during the time set forth herein, said property be sold by said broker or by me or by another broker or through some other source or whether said property be withdrawn from sale, transferred, conveyed or leased without approval of said broker.

. . . . . . . . . . . .

Dated January 8, 1951

(Signed)    N. T. Meek
            Flora E. Meek

"Contract extended to
    Dec. 1/51
(Signed)    N. T. Meek
            Flora E. Meek"

*Assigned by Chairman of Judicial Council.

"In consideration of the foregoing listing and authorization the undersigned broker agrees to use diligence in procuring a purchaser.

W. B. GRIFFITHS COMPANY

(Signed)    By Edith R. Baumgartner
Broker."

It will be noted that the contract was originally made in January, 1951, and ran to March 1, 1951. There was evidence to the effect that after March 1st, at appellants' request, respondent continued her attempts to find a buyer, and that in September of that year she obtained an offer of $200,000 which was refused by appellants. They asked her to try to find a buyer who would pay more, and respondent then insisted upon again having an exclusive authorization. A new contract was executed, but this was later superseded by the extension of the original agreement as shown above.

On November 8, 1951, respondent called appellant N. T. Meek in San Jose and advised him she had a prospective purchaser for $250,000 and discussed the possibility of a sale at that price. The following morning N. T. Meek called respondent and told her he would have to take the ranch off the market. There is a dispute regarding the rest of the conversation at that time. Respondent testified that when N. T. Meek told her he was taking the property off the market, she said, "But, Tom, how about my authorization; I still have until the 1st of December and you know I have done a great deal of work on this and I have spent a great deal of money and I have interested people; I am going to be in a most embarrassing position with my people." Appellant N. T. Meek testified that "Edith said that she thought she ought to be recompensed for what she was out for advertising. I asked her how much it was; she said 'About $480.00,' and I told her I would pay her. It was okay with her to take it off the market."

Appellant N. T. Meek then wrote respondent, under date of November 9, 1951, advising her that he was taking his ranch off the market.

In December, 1951, respondent filed an action to recover from appellants the sum of $15,000. Her first cause of action alleged she was entitled to that sum because of the withdrawal of the property from sale and the second cause of action alleged that she was entitled to that sum because defendants, without her approval, had sold the property to other purchasers. This

second cause of action was subsequently dismissed and the cause proceeded to trial upon the first count alone.

There can be no doubt but that respondent, in accordance with her written statement that she would in consideration of the listing use diligence in procuring a purchaser, did expend considerable sums of money advertising the property, taking photographs of it, gathering data for use in promoting the sale and listing it with other brokers. Supportive of this is the testimony of appellant N. T. Meek concerning the phone conversation in which he offered to pay her $480 to recompense her for her expenditures in efforts to sell the property. It cannot be doubted either that respondent actively continued her efforts to obtain a satisfactory sale up to the time when she was advised by appellants through the letter of N. T. Meek that they had taken the property off the market. This happened within the term stipulated by the writings executed by the parties.

Appellants first contend that respondent could not recover a commission without pleading and proving that she had procured a purchaser ready, able and willing to pay the price at which appellants had authorized her to sell. In support of this they cite *Merkeley* v. *Fisk*, 179 Cal. 748 [178 P. 945]. The case is not in point. In that case the plaintiff's claim was based upon allegations of performance by the broker who claimed that he had made a sale. A demurrer to his complaint was sustained and it was held on appeal that the pleading was insufficient because it did not contain allegations that the purchaser procured by the broker was one that was able, ready and willing to buy.

Appellants next argue that the contract was unilateral and without consideration. ▮ Basically, a brokerage listing is an offer of a unilateral contract, the act requested being the procuring by the broker of a purchaser ready, able and willing to buy upon the terms stated in the offer. Conformable to the settled rules governing offers of unilateral contracts such a listing, which we might term a general listing, is held to be revocable at the will of the owner in good faith at any time before performance, regardless of the efforts expended by the broker. Furthermore, such a listing leaves the owner free to list with other brokers, to sell the property through his own efforts, to withdraw the property from the market, or otherwise to revoke his offer. ▮ Latterly, however, and particularly in California, there has developed a concept of irrevocability which brokers have generally sought to imple-

ment by written provisions placing restrictions upon the freedom of the owner under a general listing. These stipulations take the form of a stated term within which the broker might accept the offer of unilateral contract by performing the required act, or of a so-called exclusive agency, doing away with the right of the owner to deal through other brokers, or of an exclusive right to sell, precluding the owner himself from selling and the like. In view of the nature of the basic transaction between the owner and the broker, that is, a listing which is no more than an offer of a unilateral contract to be accepted only by a performance of the requested act, these additional stipulations were challenged in many courts as not resulting in any contract in fact between the parties (e.g. see *Bartlett* v. *Keith,* 325 Mass. 265 [90 N.E.2d 308] ; 37 Iowa L.Rev. 350, 354). But in many states, and in this state, courts have accepted such written listings as resulting in contractual relations. Though the basic offer to pay a commission for the procuring of a purchaser ready, able and willing to buy can still be accepted only by performance, nevertheless it has been held that these restrictive stipulations bind the owner and subject him to liability if he refuses to abide by them. These holdings are sometimes based on the idea that the restrictive clauses constitute subsidiary promises resting upon the consideration that the broker agrees to and does expend time and effort to bring about a sale. Thus we find in Restatement of Contracts, section 45 :

"If an offer for a unilateral contract is made and part of the consideration requested in the offer is given or tendered by the offeree in response thereto, the offeror is bound by a contract, the duty of immediate performance of which is conditional on the full consideration being given or tendered within the time stated in the offer, . . ."

It is unnecessary to attempt to follow the reasoning given in the many opinions of courts dealing with this subject. We think that in California the rule has been too long declared and too often enforced to leave the matter open. This position of our courts is well set out in *Kimmel* v. *Skelly,* 130 Cal. 555 [62 P. 1067]. In that case the written listing was substantially the same as in the case before us. It read:

" 'For and in consideration of the services to be performed by Messrs. Hooker & Lent, I hereby employ them as my sole and exclusive agents to sell for me that certain real property [indicated] . . . This employment and authority shall continue for the full period of thirty days from the date hereof

and thereafter until withdrawn by me in writing; and I agree to pay to said Hooker & Lent, in the event of the sale of said real property by them, or by anyone else, including myself, while this contract is in force, two thousand two hundred and fifty dollars as and for their compensation hereunder.' ''

Within the time stipulated the owner sold the property and action was brought to recover the amount which the written listing stipulated would be paid in that event. It was conceded that the brokers had found no purchaser, but the evidence and findings were that they had spent time and money in attempting to do so. The court had no hesitancy in treating the written listing as a contract and said:

". . . The contract was in full force and effect at that time [when the owner sold]. . . . If the brokers had found a purchaser at any time prior to the sale made by defendant, then clearly they would have been entitled to their commission; and this circumstance alone shows that the contract was in full force and effect when the sale was made.

. . . . . . . . . . . . .

"It is claimed that the brokers' contract was one to find a purchaser, and, no purchaser having been found, no commissions were earned, and that for this reason the complaint does not state a cause of action. The contract in this case is not the ordinary broker's contract; it is more. By its terms the brokers were entitled to two thousand two hundred and fifty dollars if during the life of the instrument they found a purchaser; or if during its life defendant sold the property, they were likewise entitled to the same amount. Defendant having sold the property during the life of the contract, this last provision is relied upon to support a recovery, and justly so. The defendant made a contract and had the power to make it; and there is no reason why she should be allowed to escape from its binding force, unless equitable grounds exist which excuse her. The parties to a brokers' contract are at liberty to make the compensation of the broker depend upon any lawful conditions they see fit to place therein. The single question is, What does the contract provide?"

As to the contention there was no consideration to support the contract the court stated it was to be found in the consideration of the services to be performed by the broker. The court said that the owner had agreed that if these services produced a buyer the stipulated commission would be paid, but that: "She also further agreed to pay them the same amount in consideration of their services if she herself sold

the property. The consideration for her promise to pay the money if the sale was made by her, was the performance of services by the brokers in seeking a purchaser." In declaring the contract enforceable the court relied on *Crane* v. *McCormick*, 92 Cal. 176 [28 P. 222], *Maze* v. *Gordon*, 96 Cal. 61 [30 P. 962], and *Rucker* v. *Hall*, 105 Cal. 425 [38 P. 962], and these cases squarely support the opinion. Although the matter is not mentioned in the opinion it is noteworthy that in the Kimmel case the appellants in their opening brief challenged the provision for payment in event the sale was made by the owner as providing for a penalty and as therefore void. This contention was countered by respondent who argued that the action was not one for damages, either liquidated or unliquidated, or for a breach (citing *Maze* v. *Gordon, supra*), but was one to recover a sum of money that was to be paid on the happening of contingencies which had occurred. Said respondent in his brief in that case: "No breach is claimed and the idea of liquidated damages and penalty originated with counsel for the plaintiff. . . . By no construction of the complaint or contract can this action be converted into a claim for penalty or liquidated damages." In *Maze* v. *Gordon*, where the agreement was to pay a commission if the owner withdrew the property from sale within the term the court said: "By the terms of the employment, commissions became due 'in the event of withdrawing the sale of said property during the time.' The claim to compensation under this provision of the contract is not, as respondent suggests, as damages for a breach of the contract *in withdrawing the land from sale.* This Hamilton had a right to do, and in such event, he became indebted to plaintiff for his commissions." The contention of appellant that the contract here was unilateral and without consideration cannot be sustained in view of the authorities we have referred to.

Appellants next insist that the "attempted withdrawal of the land from sale was ineffectual since the authorization to sell was exclusive and irrevocable." To this effect they cite *Sill* v. *Ceschi*, 167 Cal. 698 [140 P. 949], where it is held that where the brokerage contract is for a definite term it cannot be revoked within the term if the broker has expended money and effort in seeking a purchaser.

It appears to be appellants' view that because they had no legal right to withdraw the property from sale, respondent therefore had the legal right to continue her efforts to find a purchaser and was required to do so before she could recover.

As stated in *Rucker* v. *Hall, supra,* the withdrawal "placed it out of her power to complete" a sale. If appellants' contentions in this respect are correct the respondent would have been required to spend additional money and time trying to find a buyer who could not have viewed the property without permission of the owner. Respondent would also have been required, in order to interest such a buyer at all, to misrepresent her position in the matter, or, what is equally as bad, to persuade a prospective buyer to enter into an agreement which she knew would not be honored by the seller, and all this for the sole purpose of placing herself in a position to collect a commission and not with the hope of making a sale. The law does not demand such absurdities or sanction such questionable practices.,

Finally, it is contended that the promise to pay if the owner withdrew the property from sale during the term must be considered either as a penalty or as a liquidated damage provision and in either view void as a matter of law. As we have noted, provisions in brokerage contracts similar to those contained in this contract have been approved and enforced by our courts in such cases as *Kimmel* v. *Skelly* and cases therein cited. (See also *Walter* v. *Libby,* 72 Cal.App.2d 138 [164 P.2d 21], *Fleming* v. *Dolfin,* 214 Cal. 269, 271 [4 P.2d 776, 78 A.L.R. 585], and *Mills* v. *Hunter,* 103 Cal.App.2d 352 [229 P.2d 456].) We think this contention cannot be sustained in view of the contrary holdings in the cases referred to. The distinction between an action for breach of the promise by the owner not to revoke or deal through others or sell himself during the stipulated term, wherein damages are sought for such breach, and a contractual provision whereby, in consideration of the services of the broker to be and being rendered, the owner directly promises that if he sells through others or by himself or revokes he will pay a sum certain, is made clear in the cited cases, particularly in the quotations we have taken from the opinion in *Kimmel* v. *Skelly.* The action is for money owed, an action in debt (*Maze* v. *Gordon, supra*), and the only breach involved is the failure to pay the promised sum. Plaintiff in such cases seeks to recover actual damages, not liquidated damages. The code provisions, therefore, concerning penalties and concerning stipulated damages are not applicable. It is not for this court at this stage to defend or attack the rationale of these decisions upon this subject. Brokerage contracts have been formulated for many years in reliance upon them. These contracts in their

language are so plain that the intent of the parties to bind themselves, just as these decisions have declared they are bound in such instances, cannot be disregarded. As we have indicated, the whole question of the relationships between owner and broker in respect of this type of transaction is one wherein there has been much conflict in decisions. Our courts have ruled in the way indicated by us and we think the rule of the cases in which they have done so ought not now to be disturbed. Although these decisions have not specifically discussed the challenge here made to the contractual provisions upon which respondent relies, it can hardly be said that they have been rendered without consideration of such attacks, for, as we have seen, the contentions were advanced in the brief in at least one, and that the principal one, of the cases cited.

The judgment appealed from is affirmed.

Van Dyke, P.J., and Schottky, J., concurred.