[Civ. No. 1393. Fifth Dist. Nov. 29, 1971.]

CHARLES B. WEBSTER REAL ESTATE, Plaintiff and Respondent, v. H. E. RICKARD, as Executor, etc., Defendant and Appellant.

## COUNSEL

Kimble, MacMichael & Jackson, Kimble, MacMichael, Jackson & Magarian, Edmond A. Kavounas, Jr., and Thomas MacMichael for Defendant and Appellant.

Di Giorgio, Davis, Hastin & Klein and Thomas R. Davis for Plaintiff and Respondent.

## OPINION

**FRANSON, J.**\*—On May 26, 1967, Dr. Moore and his wife executed an "exclusive authorization and right to sell" listing with the Warde D. Watson Realty Co., giving the broker an exclusive and irrevocable right to sell a 156-acre vineyard at a stated price of $234,000, for a term ending on December 31, 1968. The agreement was on the standard form of the California Real Estate Association. The agreed commission was to be 5 percent of the selling price, to be paid to the broker if the property were sold during

---

\*Assigned by the Chairman of the Judicial Council.

the term of the listing, or any extension thereof, by the broker, by the owner, by any other broker or through any other source. The agreement also provided that if the owner withdrew the property from sale or if it were transferred or leased during the term, he would pay the specified commission to the broker. In consideration of the exclusive right to sell, the broker agreed to use diligence in procuring a buyer.

On March 18, 1968, the listing was transferred from the Warde D. Watson Realty Co. to respondent. Dr. Moore and his wife consented in writing to the transfer; the stated price was reduced to $187,200.

Dr. Moore died on June 19, 1968, and thereafter appellant was appointed executor of decedent's will. In November 1968, appellant sold the vineyard for $152,000 independently of any efforts by respondent. Appellant's sale was confirmed by the probate court on December 10, 1968.

Upon learning of the sale respondent demanded a 5 percent commission on the sales price of $152,000, which appellant refused to pay. On December 6, 1968, respondent filed a claim against the estate in the sum of $7,600, and the claim was rejected by appellant. On January 21, 1969, respondent filed this action against appellant and Mrs. Moore, alleging the exclusive right to sell agreement, the sale of the property during the term of the agreement, and the refusal by appellant to pay the commission as therein provided. On March 3, 1970, after trial before the court without a jury, a judgment was entered in favor of respondent and against appellant for $7,600. The court also entered judgment in favor of Mrs. Moore and against respondent. No appeal is taken from that part of the judgment.

Appellant contends that the exclusive right to sell listing terminated, by operation of law, upon Dr. Moore's death, with no contractual liability under the agreement devolving upon appellant. We agree.

A real estate listing creates an agency between the broker and the owner. (Bus. & Prof. Code, § 10131; Civ. Code, § 2295; *Walter* v. *Libby,* 72 Cal.App.2d 138 [164 P.2d 21]; *Rhode* v. *Bartholomew,* 94 Cal.App.2d 272 [210 P.2d 768]; *Grand* v. *Griesinger,* 160 Cal.App.2d 397, 406 [325 P.2d 475]; *Spielberg* v. *Granz,* 185 Cal.App.2d 283, 291 [8 Cal.Rptr. 190]; 1 Miller & Starr, Current Law of Cal. Real Estate, pp. 142-146.) The broker's authority is fixed by the terms of the listing and is to negotiate with third parties for the sale of the property on behalf of the owner. (Bus. & Prof. Code, § 10131; *Lyne* v. *Bonner,* 129 Cal.App.2d 743, 746 [277 P.2d 941].)

Because of its personal and fiduciary character, the agency is terminated by the death of or renunciation by the agent (Civ. Code, § 2355) or by

the death of or revocation by the principal, unless the agent has an interest in the subject of the agency (Civ. Code, § 2356; Rest. 2d Agency, §§ 118, 120). Respondent concedes that under the listing he was not vested with an interest in the agency. (See *Peterson* v. *Montgomery Holding Co.*, 89 Cal.App.2d 890, 897 [202 P.2d 365].) Upon termination of the agency, the authority of the agent ceases except as to bona fide transactions entered into with third parties prior to actual notice of termination (Civ. Code, § 2356; Rest. 2d Agency, §§ 118, 120).

Apart from the agency relationship, the exclusive right to sell listing was a contract of employment. (Lab. Code, § 2750; *Sumner* v. *Nevin*, 4 Cal. App. 347 [87 P. 1105]; Cal. Real Estate Sales Transaction (Cont. Ed. Bar) § 5.5, p. 129.) It provided that in consideration of the services of the broker and his promise to use diligence in procuring a buyer, the owner employed the broker, for a specified term, to sell the property at a stated price. The covenants of an owner in this type of listing have been enforced over the years by the California courts with little contractual analysis. (Mandel, *The Right of a Real Estate Broker to a Commission in California*, 8 U.C.L.A. L.Rev. 152-153.) The exclusive right to sell listing as contrasted with an "open" listing has been characterized as a bilateral contract consisting of an exchange of mutual promises rather than an offer for a unilateral contract. (*Herz* v. *Clarks Market*, 179 Cal.App.2d 471, 472-473 [3 Cal.Rptr. 844]; *Coleman* v. *Mora*, 263 Cal.App.2d 137, 148-149 [69 Cal. Rptr. 166]; *Baumgartner* v. *Meek*, 126 Cal.App.2d 505, 509-510 [272 P.2d 552]; 1 Miller & Starr, Current Law of Cal. Real Estate, p. 246.)

In *Kimmel* v. *Skelly*, 130 Cal. 555, 559 [62 P. 1067], it is held that the consideration for the covenant of the owner to pay a commission upon her own sale during the existence of the listing was the performance of services by the broker in attempting to find a buyer. Where the broker has used diligence, he is entitled to compensation even though he was not the procuring cause of the sale. (*Fleming* v. *Dolfin*, 214 Cal. 269 [4 P.2d 776, 78 A.L.R. 785]; *Wright* v. *Vernon*, 81 Cal.App.2d 346 [183 P.2d 908]; *Walter* v. *Libby, supra*, 72 Cal.App.2d 138, 142; *Lowe* v. *Loyd*, 93 Cal.App. 2d 684 [209 P.2d 851]; *Baumgartner* v. *Meek, supra*, 126 Cal.App.2d 505.)

The principles upon which the owner has been held liable for a commission, even though no buyer was procured by the broker, are summarized in *Coleman* v. *Mora, supra*, 263 Cal.App.2d 137, 145-146, where the court stated that the broker is entitled to a commission when the owner "in derogation of the broker's rights, takes the property off the market . . . or otherwise *wrongfully* deprives the broker of the opportunity to make a

sale at any time during the term of the agreement, as by giving a lease with an option to purchase . . . or by exchanging the property . . . or by entering into a contract to sell. . . ." (Italics added.) The essence of the breach is the owner's *wrongful* deprivation of the broker's opportunity to make a sale during the contract term. The owner, having covenanted to give the broker an exclusive and irrevocable right to sell, by implication has covenanted not to interfere in any way with his opportunity to make a sale, and if he does interfere he will be held liable in damages. The rationale for enforcing the owner's covenant in the face of the clear revocation of the broker's authority is that although the owner has the power to terminate the agency at any time, he does not have the right to do so in violation of the terms of the contract. (*Blumenthal* v. *Goodall,* 89 Cal. 251 [26 P. 906]; *Baumgartner* v. *Meek, supra,* 126 Cal.App.2d 505; *Coleman* v. *Mora, supra,* 263 Cal.App.2d 137, 145-146; Rest. 2d Agency, § 450.) It is the wrongful termination of the listing by the owner that gives rise to a liability for damages.

The death of the owner presents an entirely different situation. Death is a fortuitous event beyond the control of the decedent. It cannot be deemed to be a wrongful act and ordinarily is not even a breach of contract by the deceased. (Rest. 2d Agency, § 450, com. b.) Death terminates the agency by operation of law, and the authority of the broker to represent the owner in seeking a buyer for the property is ended. (Civ. Code, § 2356; *Duin* v. *Security-First Nat. Bank,* 132 Cal.App.2d Supp. 904 [283 P.2d 790]; Rest. 2d Agency, § 120; 3 Am.Jur.2d, Agency, § 51, pp. 453-454; Seavey, Handbook of Law of Agency (1964) § 48, p. 88.) As a consequence of this termination of authority, the broker must be deemed to be relieved of his obligation to perform his covenant of diligence. Absent authority to perform, he cannot be compelled to perform, nor can he be held liable for failure to perform. (Civ. Code, § 1511, subds. 1, 2.) Mutuality of obligation, which may have existed prior to death, is gone. Stated another way, the death of the owner, by operation of law effects a prospective failure of consideration on the part of the broker which discharges all executory obligations under the contract. (5A Corbin on Contracts, § 1229, p. 508; 6 Corbin on Contracts, § 1255, p. 21; Rest., Contracts, §§ 280, 281; 1 Witkin, Summary of Cal. Law (1960) Contracts, § 246, p. 277.)

In the Restatement Second of Agency, section 120, Death of Principal, comment a, the following is stated: "*Rationale.* Agency is a personal relation, necessarily ending with the death of the principal; the former principal is no longer a legal person with whom there can be legal relations. One cannot act on behalf of a non-existent person. Further, to the extent that agency is a consensual relation, it cannot exist after the death or incapacity

of the principal or the agent. . . . an agreement that an agency should continue after death is a legal impossibility."

The Restatement gives the following example: P employs A as a salesman at a specified commission, the agreement stating that the employment is to continue for one year and is not to terminate if P dies. P dies—the authority ends. (Illus. No. 3, to com. a of Rest. 2d Agency, § 120.)

In Seavey, Handbook of the Law of Agency, section 48, at page 88, it is stated: "Theoretically, agency must terminate with the death of either party; the agent can no longer act after his own death, nor can a live agent act for a non-existent principal. Authority is the power to act for the principal and subject to the control of another. If the other dies, no one can act for his benefit or be subject to his control. . . . It [the law] might well have permitted a transaction initiated by the principal to be completed by his chosen representative after his death. But the law has been strictly logical. The death of the principal or a member of a partnership employing the plaintiff terminates the employment. Death makes ineffective specified directions given to the agent."

■ Also, as stated in 3 American Jurisprudence 2d, Agency, section 51, page 453: "It is well established as the general rule that the death of the principal operates as an instantaneous and absolute revocation of the agent's authority or power, unless the agency is one coupled with an interest. Hence, any act done by the agent . . . after the principal's death will not affect the estate of the latter.

"The reason advanced for the general rule that the agency ceases is that the power to act is dependent upon the control and direction of another, which has been withdrawn by death."

At page 454, the following is found: "The general rule that an agency is terminated by the death of the principal applies equally to a power of attorney or to specific authority given to an agent to execute a specific act. . . . the mere fact that the power is irrevocable during the lifetime of the person giving it does not prevent the operation of the rule." (See also Story, Commentaries on the Law of Agency, § 488, pp. 507-509.)

This rule is in accord with English law. As stated in Anson, Principles of English Law of Contracts and of Agency in its Relation to Contract (1964) page 540: "Rights of Agent against the principal. Where the employment is on a commission basis and is analogous to that of a contract of service, it is an implied term of the agreement that the principal shall not wrongfully prevent the agent from earning his commission . . . ."

At pages 560-561, it is stated: "There are certain circumstances which will put an end to the relationship of principal and agent by operation of law . . . .

". . . . . . . . . . . . . . . . . . .

"(c) The death (or if principal is a corporation, the dissolution) of the principal determines (ends) at once the authority of the agent. . . .

". . . . . . . . . . . . . . . . . .

"The representatives of a deceased principal may, however, ratify any contract entered into on behalf of the estate but they are in no way bound to do so. . . ." (*Watson* v. *King,* 18 Q.B.D. 116.) (See also 1 Holsbury's Laws of England (3d ed.) Agency, § 545, p. 244.)

The owner-broker relationship is a personal one based on mutual confidence and requires not only diligence by the broker in seeking a buyer (*Beeler* v. *West American Finance Co.,* 201 Cal.App.2d 702, 705 [20 Cal.Rptr. 190]) but, necessarily, the cooperation of the owner in giving the broker information concerning the property, in showing the property, and in negotiating the terms of sale to a prospective buyer. We believe that it is reasonable to assume that both the broker and the owner intended that the listing would terminate on the death of either party. In the absence of an expression of intention to the contrary, the continued life of both reasonably must be deemed an implied condition of the contract. In such a case the death of either renders impossible the performance contemplated and the contract is discharged. (Civ. Code, § 1438; 1 Witkin, Summary of Cal. Law (1960) Contracts, § 240, p. 269; Rest., Contracts, §§ 250, 396; 6 Corbin on Contracts, § 1267, p. 69; 53 Am.Jur.2d, Master and Servant, § 38, pp. 114-115.)

Respondent cites *Estate of Burke,* 198 Cal. 163, 167 [244 P. 340, 44 A.L.R. 1341], for the rule that it is the duty of a representative to perform the contracts of his decedent, unless the acts to be performed are personal in nature. (See *Didier* v. *American Casualty Co.,* 261 Cal.App.2d 742, 750 [68 Cal.Rptr. 217]; Rest., Contracts, § 459.) However, respondent has failed to distinguish between contracts for personal services absent an agency relationship such as hiring another to create a work of art or to construct a building or to cultivate land (*Estate of Burke, supra,* 198 Cal. 163; *California Packing Corp.* v. *Lopez,* 207 Cal. 600 [279 P. 664, 64 A.L.R. 1412]; *Didier* v. *American Casualty Co., supra,* 261 Cal.App.2d 742; Rest., Contracts, § 459) and employment contracts whereby the employee is authorized to deal on behalf of the employer with third parties, which is the essence of an agency. (Civ. Code, §§ 2295, 2297; Lab. Code, § 2750; 1

Witkin, Summary of Cal. Law (1960) Agency and Employment, § 1, pp. 374-375.)

Respondent's argument also ignores the provisions of Labor Code section 2921 (formerly Civ. Code, § 1996) that every employment in which the power of an employee is not coupled with an interest in its subject is terminated by notice to the employee of either death or the legal incapacity of the employer. Under this statute it has been held that a contract of employment with a firm terminates on the dissolution of the firm by the death of a partner. (*Louis* v. *Elfelt,* 89 Cal. 547 [26 P. 1095].)

In *Stoll* v. *Stoll* (1936) 5 Cal.2d 687, 692 [56 P.2d 226], our Supreme Court stated that there may be situations where a contract of employment is not dependent upon the life of the principal and may survive his death. However, the factual situation in *Stoll* is distinguishable in that the contract of employment stated that as additional consideration for the employment the employee was to receive a share in the estate of the principal, thereby creating an employment coupled with an interest. Also, all parties interested in the estate of the principal executed the contract prior to death and agreed to be bound by its terms until final distribution of the estate.

Our decision is in accord with the legislative policy for administration of decedents' estates. When a person dies, title to his real property passes to the person to whom it is devised or bequeathed or to the persons who succeed to his estate, subject to the possession of the representative and the control of the probate court for purposes of administration. (Prob. Code, § 300.) The representative, unless bound by an executory contract for the conveyance of real property (Prob. Code, § 850) is free to decide whether the property is to be sold or held for distribution to the heirs, depending on the best interests and financial circumstances of the estate. If the representative elects to sell the property in the course of administration, the provisions of Probate Code section 760 come into play. This statute provides that the representative may enter into a written contract with a real estate agent to secure a purchaser for the property of the estate and may contract to pay the broker a commission out of the proceeds of a sale secured by the broker, the amount of which must be fixed and allowed by the court upon confirmation of the sale. The statute also provides that by execution of the contract no personal liability shall attach to the representative or to the estate unless the sale is made and confirmed by the court. An exclusive brokerage agreement in the sense of a covenant to pay a commission irrespective of whether the broker secured the successful bidder is contrary to Probate Code section 760 and is not enforceable against the estate. (*Wilson* v. *Fleming,* 106 Cal.App. 542 [289

P. 658]; Cal. Decedent Estate Administration (Cont. Ed. Bar) § 14.18, pp. 511-512.)

We recognize that there may be situations where a representative may be liable for a commission to a broker if he has ratified or affirmed the contract of his decedent. (Civ. Code, §§ 2300, 2307; Rest. 2d Agency, § 82; 1 Witkin, Summary of Cal. Law (1960) Agency and Employment, § 23, p. 403.) Also, where the representative has accepted the benefit of the efforts of the broker, he may be liable for the reasonable value of the services; for example, if he sells the property to a buyer procured by the broker. (1 Witkin, Summary of Cal. Law, Contracts, § 7, p. 19; Rest., Restitution, § 5.) Neither of these situations is before us. Respondent did not sue on a quasi-contractual theory but only on the written contract, nor did he allege or prove a ratification or affirmance of the contract by appellant. The record shows that respondent never procured a buyer at the price stated in the listing, nor was he responsible for securing the buyer for the ultimate sale.

We conclude that the contractual obligation of Dr. Moore under the listing terminated on his death rather than devolving upon his executor, and that the judgment for a commission based upon the contract cannot stand.

The judgment is reversed.

Stone, P. J., concurred.

Brown (G. A.), J., deeming himself disqualified, did not participate.

Respondent's petition for a hearing by the Supreme Court was denied January 26, 1972.