Filed 3/27/13  Crawford v. JPMorgan Chase Bank CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| DOUGLAS J. CRAWFORD, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> JPMORGAN CHASE BANK et al., <br><br> Defendants and Respondents. | D061854 <br><br><br> (Super. Ct. No. 37-2011-00151958-PR-OR-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Julia C. Kelety, Judge.  Affirmed.

This action was instituted in propria persona by plaintiff Douglas J. Crawford (Crawford) on behalf of himself and as attorney for his mother, Ninon Crawford (Ninon),[1] to compel defendants JPMorgan Chase Bank, N.A. (Chase), Chase Investment Services Corp. (CISC), and their employees, defendants Sherri Kohli, Richard B. Davis and Melissa Griffin (collectively defendants) to honor the authority of Crawford as

---

[1]    Because Douglas Crawford and his mother, Ninon, share the same last name, in the interests of clarity we refer to her by her first name.  We intend no disrespect.

attorney-in-fact for Ninon, under a power of attorney executed by Ninon to control her bank accounts.

In response, defendants brought a motion to change venue to the Superior Court of Ventura County based upon the fact that county was where Ninon resided. In its tentative ruling, the court granted the motion and imposed sanctions in the amount of $11,802 based upon Crawford's conduct in opposing the motion whereby he "intentionally obfuscated" his mother Ninon's current residence.

At the hearing on the motion, Crawford for the first time informed the court that his mother, Ninon, had passed away. Based upon this disclosure, the court ruled that the motion to transfer venue was moot, but affirmed its tentative ruling imposing sanctions on Crawford in the amount of $11,802.

On appeal, Crawford asserts (1) the action abated upon Ninon's death resulting in an "instantaneous and absolute revocation" of the court's jurisdiction to award sanctions, (2) defendants needed to demonstrate Crawford's venue selection was not proper under any ground, (3) at the time of the filing of the action Ninon was a resident of San Francisco County, (4) Ninon's intent became her agent's intent with regard to residency, (5) he had the authority to change venue to San Diego for litigation purposes, (6) the court had no jurisdiction to award attorney fees without granting the motion to transfer, (7) the court abused its discretion by awarding attorney fees, (8) upon Ninon's death he had no power to notify the court or act on Ninon's behalf, and (9) upon Ninon's death he could no longer be sanctioned as her attorney.

2

Defendants in turn have requested that we impose sanctions against Crawford for filing a frivolous appeal and his "intentional misrepresentations to this reviewing court."

We affirm the court's award of sanctions and also impose sanctions against Crawford in the amount of $14,500.

FACTUAL AND PROCEDURAL BACKGROUND

A.  *Ninon's Banking Relationship with Defendants*

Ninon was a bank customer of Chase and an investment client of CISC. Defendants Kohli, Davis and Griffin were employees of Chase and CISC.  Ninon's bank accounts were opened and maintained at the Ventura branch of Chase.  CISC provided investment services to Ninon at its Ventura branch.  Ninon's bank records listed her residence as "1171 Cornwall Lane, Ventura, California."  CISC's records list the same Ventura, California residence address for Ninon.

B.  *Petition To Compel Third Party To Honor Authority of Attorney-in-Fact*

In August 2011 Crawford filed a verified petition in the Superior Court of San Diego County pursuant to Probate Code section 4406 (all further undesignated statutory references are to the Probate Code).  The petition alleged that Crawford is a resident of San Diego County and that "(v)enue is **NOT** proper in Ventura County because, at the time of filing this petition, the principal, Ninon T. Crawford, is **NOT** a resident of Ventura County."

The petition alleges that on June 25, 2011, Crawford was appointed as attorney-in-fact for Ninon pursuant to a power of attorney, which was attached to the petition as exhibit A and which it was alleged was "validly and competently executed by [Ninon] on

3

June 25, 2011." The petition states that Ninon held funds on deposit with Chase, that Crawford, "as attorney-in-fact, has demanded withdrawal of said funds" and that "[defendants] Sherrie Kohli, Richard B. Davis, and Melissa A. Griffin are all individuals that [*sic*] refuse to acknowledge the validity of the Power of Attorney that is the subject of this action."

The petition alleges that defendants refused to provide Crawford any information regarding the accounts and that the "refusal to honor Petitioner's authority as attorney-in-fact is not done in good faith." Crawford also states in the petition that "[defendants'] sole factual and legal basis for refusing to honor Petitioner's Power of Attorney form is the criminal complaint filed against [defendants] with the appropriate law enforcement agencies."

The petition prays for an order "[d]irecting [defendant] to honor Petitioner's authority as attorney-in-fact for the Principal, Ninon T. Crawford," to remit all funds of Ninon to the alternate attorney-in-fact, Christopher J. Crawford, to provide a monthly accounting of all bank accounts, to award attorney fees and costs, and for "punitive or exemplary damages for the despicable conduct caused by [defendants]."

C.  *Defendants' Motion To Transfer Venue to Ventura County*

As noted, *ante*, Ninon's bank records listed her residence as "1171 Cornwall Lane, Ventura, California." However, in a letter dated July 9, 2011, Crawford advised defendants that: "On June 16, 2011, my mother, Ninon T. Crawford, suffered a stroke. She was hospitalized in Ventura and is now recovery [*sic*] in a rehabilitation facility in San Francisco." Thereafter, on July 20, 2011, Crawford sent an e-mail to defendants'

4

counsel that stated: "Under Probate Code section 4523, venue is proper [in]: 1) the county in which the principal resides (Ventura & San Francisco) . . . ." In an e-mail sent the next day Crawford again advised counsel for defendants "my mother currently resides in two separate counties: Ventura & San Francisco . . . ."

Counsel for defendants had several communications with Crawford prior to the filing of the petition, wherein defendants repeatedly advised him that, under section 4523, Ventura County was the proper venue for the petition because Ninon was a resident of Ventura County. Crawford was also advised before filing the petition that defendants would bring a motion to transfer venue if the petition were filed in San Diego County.

Upon receipt of the petition, defendants again requested that Crawford transfer venue to Ventura County. He refused the request and, on September 15, 2011, defendants filed their motion to transfer venue pursuant to Probate Code section 4523 and Code of Civil Procedure section 395, subdivision (a).

D. *Crawford's Failure To Advise the Court of Ninon's Death*

On October 20, 2011, Crawford filed his opposition to the motion to transfer. Ninon died 11 days later on November 1, 2011. As noted, *ante,* Crawford did not disclose her death to the court or defendants until the January 17, 2012 hearing on the motion to transfer. Instead, notwithstanding that Ninon's death terminated all authority under the power of attorney, thereby rendering the power of attorney moot,[2] Crawford continued to prosecute the petition by propounding written discovery, noticing the

---

2    Pursuant to section 4152, subdivision (a)(4), the authority of an attorney-in-fact is terminated upon the death of the principal.

5

depositions of Chase and CISC, and requiring that the parties engage in "meet and confer" communications.

Crawford also did not disclose Ninon's death to the court in an ex parte application he filed on January 9, 2012, eight days prior to the hearing on the motion to transfer hearing. Not only did the ex parte application fail to mention Ninon's death more than two months prior, its wording implied that she was still alive. For example, Crawford stated in the ex parte application that "Petitioner's true name is . . . ." , that petitioner "will never return to Ventura County", "[p]etitioner has come to Court to resolve a simple dispute . . . .", and that "[i]f there is a problem with Petitioner . . . then the Court needs to have a modicum of integrity and decency and admit as much and disqualify from any further participation." !CT 159:18-22)!

E. *Court's Tentative Ruling*

On January 17, 2012, the court issued a tentative ruling on the motion to transfer. The tentative ruling stated that "it is clear that venue is improper in San Diego County and the case must be transferred" and that "Ventura County is the proper county for venue." With respect to defendants' request for sanctions, the court stated it "concludes that Mr. Crawford's selection of venue was not made in good faith" and that "Mr. Crawford appears to have intentionally obfuscated the actual whereabouts of Mrs. Crawford and her current status, effectively 'hiding the ball' and making it difficult for the moving party (and the court) to analyze whether Mrs. Crawford's residence had changed from Ventura. Accordingly, the court will grant the request for sanctions . . . the court

6

orders that Mr. Crawford pay to the moving party the sum of $11,802. The case is ordered transferred forthwith."

F. *Hearing on Motion To Transfer*

At the hearing on the motion to transfer, Crawford informed the court for the first time that Ninon died on November 1, 2011, and that he had filed Ninon's death certificate and a request for dismissal. At the hearing, Crawford stated that he had presented a request for dismissal to the clerk's office and asserted the court was therefore without jurisdiction to rule on the motion to transfer or award sanctions against him.

Following oral argument, the court directed Crawford and defendants to file briefs addressing whether the request for dismissal was proper, and the court's jurisdiction to rule on the motion to transfer.

G. *Court's Ruling*

On April 13, 2012, following the supplemental briefing by the parties, the court issued its ruling on the motion to transfer and the request for sanctions. The ruling states in part: "Now being appraised [*sic*] of the death of Ms. Crawford, the court concludes that much of the court's tentative decision is rendered moot. Although the court stands by its reasoning as set forth in the tentative, it is no longer appropriate to transfer the action to another county. [¶] However, the court's findings and order with regard to sanctions are not moot. Ms. Crawford, the principal, was alive when the petition . . . was filed on August 11, 2011. The defects in venue existed at that time. There never were any facts suggesting that venue belonged in San Diego County, which would have been well known to the principal's attorney (and son), CRAWFORD. Further, the court concluded

7

that Mr. Crawford appears to have intentionally obfuscated the actual whereabouts of Mrs. Crawford and her current status, effectively "hiding the ball" and making it difficult for the moving party (and the court) to analyze whether Mrs. Crawford's residence had changed from Ventura.' Certainly the failure to timely disclose Mrs. Crawford's death confirms the court's conclusion that CRAWFORD intentionally obfuscated her 'current status.' Accordingly, the court finds by clear and convincing evidence that CRAWFORD's choice of venue in San Diego was not made in good faith. CRAWFORD's behavior throughout this litigation has been unreasonable and with the apparent intent to cause the maximum inconvenience to the court and opposing counsel. Such conduct is not worthy of an officer of the court. [¶] Thus, the court confirms so much of the tentative as was necessary to rule on the Motion for reasonable expenses and fees incurred in making the motion to transfer, pursuant to [Code of Civil Procedure section] 396b[, subdivision] (b)."

DISCUSSION

I. *STANDARD OF REVIEW*

The issue of whether a trial court has personal jurisdiction or subject matter jurisdiction raises questions of law, which we review de novo on appeal. (*Thomson v. Anderson* (2003) 113 Cal.App.4th 258, 266; *Robbins v. Foothill Nissan* (1994) 22 Cal.App.4th 1769, 1774.)

The issue of whether attorney fees are properly awarded as sanctions, and the amount of sanctions imposed, are within the lower court's discretion and, therefore, reviewed under the abuse of discretion standard. (*In re Marriage of Davenport* (2011)

8

194 Cal.App.4th 1507, 1524.) Discretion is abused only when the trial court's ruling "exceeds the bounds of reason, all of the circumstances before it being considered." (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.) "'"(U)nless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power. [Citations.] The burden is on the party complaining to establish an abuse of discretion."'" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 331.)

## II. *ANALYSIS*

### A. *Court's Jurisdiction To Order Crawford To Pay Defendants' Fees and Costs*

On appeal, Crawford contends that his Ninon's death acted as an "instantaneous and absolute revocation" of the Court's jurisdiction to act in the case. This contention is unavailing.

While the death of the principal terminates the authority of an attorney-in-fact under a power of attorney under section 4152, subdivision (a), as we shall explain, the principal's death does not revoke the court's jurisdiction to award attorney fees.

"Where a cause of action is within the general jurisdiction of a court, the voluntary appearance of the parties and submission of the cause on its merits confers jurisdiction to try the issues presented." (*Rio Vista Mining Co. v. Superior Court* (1921) 187 Cal. 1, 5.) Moreover, "[j]urisdiction once acquired is not defeated by subsequent events which might have prevented jurisdiction had they occurred before personal service of the action was made." (*Maloney v. Maloney* (1944) 67 Cal.App.2d 278, 280 (*Maloney*); see also *Goldman v. Simpson* (2008) 160 Cal.App.4th 255, 264.)

9

For example, in *Maloney, supra,* 67 Cal.App.2d 278, the husband filed a petition for divorce, the wife was thereafter given custody of the children, and the husband was required to pay them support. At the time of the order neither he nor the children were in California because, after filing the petition, he moved to Nevada. (*Id.* at p. 279.) The husband asserted that the court was without jurisdiction to award custody to his ex-wife because the children were not in California at the time that order was made. (*Id.* at pp. 279-280.)

The Court of Appeal rejected this contention: "When the action was commenced by plaintiff the children were in California under the joint control of their parents. By his very act in commencing the action plaintiff submitted not only himself to the jurisdiction of the court but also the res, that is, his status as husband and as father. The court thereafter had the power to enter an effective judgment for him or against him, *in personam,* relative to any substantial allegation of the pleadings. Neither the mere physical departure of himself nor that of the children from California in the least altered the jurisdiction of the court completely to determine the controversy which he had lithely initiated." (*Maloney, supra,* 67 Cal.App.2d at p. 280.)

As Code of Civil Procedure section 410.50, subdivision (b) states: "Jurisdiction of the court over the parties and the subject matter of an action continues throughout subsequent proceedings in the action."

Thus, upon Crawford's filing of the petition, the trial court obtained jurisdiction over Crawford and his mother, Ninon. Upon defendants filing their motion to transfer, the court obtained jurisdiction over the defendants. And, once obtained, the court's

10

jurisdiction continued throughout subsequent proceedings in the action, notwithstanding Ninon's death.

Crawford cites several cases in support of his contention that the lower court lacked jurisdiction to impose sanctions. None, however, support his position. *Paul v. Milk Depots, Inc.* (1964) 62 Cal.2d 129 only held that appellate courts need not address the merits of an appeal where events which occur subsequent to filing the appeal render the underlying action moot. In *Milk Depots,* the California Supreme Court held the appeal there was moot when, while the appeal was pending, a milk distributer which allegedly violated a state pricing regulation went out of business and the regulation was changed so that the milk distributer would not have been in violation had it continued operations. (*Id.* at p. 134.)

*Turner v. Markham* (1909) 156 Cal. 68, 69-70, which is also cited in Crawford's opening brief, stands for the same proposition. In *Turner,* an appeal of an order directing the turnover of assets to satisfy a judgment was rendered moot and dismissed as "a matter of indifference to the parties" because the underlying judgment was reversed in a companion appeal. There, our high court held "[t]he proceedings to enforce the judgment must fall with the judgment itself. . . . [¶] . . . The mere fact that liability for costs of appeal may be involved does not affect this conclusion." (*Id.* at p. 69.)

*In re Estate of Blythe* (1895) 108 Cal. 124, 128 and *Leroy v. Bella Vista Inv. Co.* (1963) 222 Cal.App.2d 369, 378, similarly hold that an appeal will be dismissed, notwithstanding a claim for costs, ""where all the questions involved in it have become moot and abstract or where, because of the happening of some event, a decision would be

11

ineffectual and could serve no useful purpose."'" (*Leroy, supra,* 222 Cal.App.2d at p. 378.)

None of these cases address the continuing jurisdiction of the superior court and therefore have no application here.

Nor do any of the other cases cited in Crawford's opening brief stand for the proposition that Ninon's death terminated the lower court's jurisdiction. *Jay v. Dollarhide* (1970) 3 Cal.App.3d 1001, *Charles B. Webster Real Estate v. Rickard* (1971) 21 Cal.App.3d 612, *Lombardo v. Santa Monica Young Men's Christian Ass'n* (1985) 169 Cal.App.3d 529 all address the termination of authority under a power of attorney or agency agreement upon the death of the principal. Neither party disputes the fact that when Ninon passed away, any authority under the power of attorney ceased. However, the termination of Crawford's authority did not terminate the lower court's jurisdiction.

*Summers v. Superior Court* (1959) 53 Cal.2d 295, 297-298, holds that the superior court has no jurisdiction to rule on a contract dispute between a litigant and a court reporter because no action was before the court relating to the dispute. *County of Los Angeles v. Superior Court (*1999) 21 Cal.4th 292, 303-304 and *Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 292 only address whether a decedent's representative may seek damages for the decedent's pain and suffering in a survival action for wrongful death.

B. *Venue*

Although the court found that the motion to transfer venue to Ventura County was rendered moot by the death of Ninon, on this appeal, Crawford continues to assert that

12

Ninon's residence was in San Francisco and that venue was proper in San Diego. Even if we were to reach this contention on the merits, which we need not because the issue is moot, we would conclude that it lacks merit.

Section 4541, subdivision (f) authorizes a petition to be filed for the purpose of "(c)ompelling a third person to honor the authority of an attorney-in-fact" as Crawford did here. Section 4523 sets forth the priority for venue for such a petition as follows: "The proper county for commencement of a proceeding under this division *shall be determined in the following order of priority:* [¶] (a) *The county in which the principal resides.* [¶] (b) The county in which the attorney-in-fact resides. [¶] (c) A county in which property subject to the power of attorney is located. [¶] (d) Any other county that is in the principal's best interest." (Italics added.)

As detailed, *ante,* the evidence submitted by defendants established that at the time of the filing of the petition, and the motion to transfer, Ninon resided in Ventura County. The documents she provided to Chase and CISC all listed her residence address as 1171 Cornwall Lane, Ventura, California. The power of attorney itself states that Ninon resided at 1171 Cornwall Lane, Ventura, California.

Prior to the filing of the petition, Crawford informed defendants' counsel that his mother was recovering in a rehabilitation facility in San Francisco which was the basis for his statement that she resides in both Ventura and San Francisco. However, merely being in San Francisco to receive medical care does not establish that Ninon was a resident of San Francisco. "One who is merely stopping over at a place in a hotel, motel, rooming house, or who is vacationing is not a resident. [Citation.] A residence is

13

established by personal presence in a fixed and permanent abode, with the intent of remaining there. [Citation.] *The fundamental elements necessary to create a residence in a particular place are actual bodily presence in the place combined with a freely exercised intention* of *remaining there permanently or for an indefinite time*[] [citation] *without any present intention to remove from the same.*" (*Enter v. Crutcher* (1958) 159 Cal.App.2d Supp. 841, 845, italics added.)

Crawford's contention that the power of attorney granted him the authority to change Ninon's residence to San Diego for "litigation purposes" is also unavailing. The power of attorney did not grant such authority. The powers granted were specifically stated as: "To act as my attorney-in-fact in any lawful way on all matters pertaining to the handling of my estate, financial transactions, investment transactions, insurance and annuity transactions, real property sales, tangible personal property transactions, banking and other financial institutions transactions, claims and litigation, personal and family maintenance, benefits from Social Security, Medicare, Medicaid, or other government programs, and tax matters." The power of attorney does not mention any power to relocate the principal's residence for "litigation purposes."

Crawford contends that section 4452, subdivision (d)(4) authorizes the attorney-in-fact pursuant to a power of attorney to move "from place to place." However, section 4452, subdivision (d)(4) only describes powers relating to "tangible personal property" of the principal, *not* the principal herself.

14

C. *The Award of Attorney Fees*

Crawford asserts that the court erred in awarding attorney fees to defendants because (1) it had no jurisdiction to award fees without granting the motion to transfer, (2) section 4523 has never been interpreted and even the California Supreme Court "has admitted that that the definition of 'residence' is obscure and elusive", and (3) after Ninon's death he had no power to act on her behalf and represent her as her attorney. We reject these contentions.

Code of Civil Procedure section 396b, subdivision (b) authorizes a court to order payment to the prevailing party expenses and attorney fees incurred in making a motion to transfer: "In its discretion, the court may order the payment to the prevailing party of reasonable expenses and attorney's fees incurred in making or resisting the motion to transfer whether or not that party is otherwise entitled to recover his or her costs of action. In determining whether that order for expenses and fees shall be made, *the court shall take into consideration (1) whether an offer to stipulate to change of venue was reasonably made and rejected, and (2) whether the motion or selection of venue was made in good faith given the facts and law the party making the motion or selecting the venue knew or should have known.* As between the party and his or her attorney, those expenses and fees shall be the personal liability of the attorney not chargeable to the party." (Italics added.)

As detailed, *ante*, Crawford had multiple communications with defendants' counsel prior to filing the petition wherein counsel advised Crawford that Ventura County was the proper venue for the petition because Ninon resided in Ventura County.

15

Crawford was also advised before filing the petition that defendants would bring a motion to transfer venue if the petition were filed in San Diego County. Crawford knew his mother resided in Ventura County and so advised the Superior Court of Ventura County in a sworn declaration.[3] After filing the petition, Crawford was requested to stipulate to transfer venue to Ventura County. Mr. Crawford refused to do so, thereby necessitating the motion to transfer venue.

Crawford argues that upon the death of his mother, he "had no power to notify the Court or act on Appellant N's behalf." However, after her death, Crawford continued to initiate discovery, filed an ex parte application and, indeed, continues to represent Crawford in this appeal as "Appellant N." Nothing prevented Crawford from advising the court and defendants' counsel of Ninon's death. In fact, as the court noted in its ruling, as an officer of the court, he was ethically required to do so.

The court acted well within its discretion, given all these facts, in finding Crawford's venue selection was not made in good faith. As such, the award of attorney fees and costs pursuant to Code of Civil Procedure section 396b, subdivision (b) was reasonable and appropriate.

---

[3] Chase has requested that we take judicial notice of Crawford's petition for probate and order for probate filed with the Superior Court of Ventura County. We grant Chase's request.

16

D.  *Defendants' Request for Sanctions on this Appeal*

Defendants assert that sanctions are warranted against Crawford for bringing a frivolous appeal and making continued misrepresentations to this court.  We conclude that sanctions are warranted in this matter.

Code of Civil Procedure section 907 provides:  "When it appears to the reviewing court that the appeal was frivolous or taken solely for delay, it may add to the costs on appeal such damages as may be just."  California Rules of Court, rule 8.276 similarly provides:  "On motion of a party or its own motion, a Court of Appeal may impose sanctions . . . on a party or an attorney for: [¶] (1) taking a frivolous appeal or appealing solely to cause delay."

Defendants assert this appeal is frivolous, entirely without merit, and was filed by Crawford solely to delay enforcement of the ruling requiring him to pay $11,802 in sanctions.  They note that the opening brief cites numerous cases that are irrelevant to the issue presented in this case—whether the lower court had jurisdiction to issue the ruling granting sanctions.  Defendants also point out that on this appeal, Crawford continues to contend that Ninon "never legally resided in Ventura County because [Ninon] never established the intent to reside in Ventura County" and that Ninon "was *never* a resident of Ventura at all because she never possessed the requisite intent to remain."

It also should be noted that in his briefing, Crawford purports to be acting as his mother Ninon's attorney.  However, a review of his State Bar records indicates he is on inactive status, thereby rendering him unable to practice law.

17

In supplemental briefing, Crawford notes that a party's request for sanctions must be made by a separately filed motion filed no later that 10 days after the appellant's reply brief is due.  (Cal. Rules of COurt, rule 8.276(b)(1); *FEI Enterprises, Inc. v. Yoon* (2011) 194 Cal.App.4th 790, 807.)  Chase did not file such a motion.

However, we may impose sanctions on our own motion, so long as notice is given that sanctions may be imposed, the appellant is given an opportunity to respond, and the appellant is afforded a hearing on the issue of sanctions.  (Cal. Rules of Court, rule 8.276(b).)

All these protections were afforded to Crawford.  By letters dated February 26, 2013 and March 4, 2013, we notified Crawford of Chase's request for sanctions and gave Crawford the opportunity to respond.  Crawford did so in his supplemental brief, referred to, *ante*.  At oral argument in this matter Crawford was afforded the opportunity to argue the issue of sanctions.

We order that Crawford pay sanctions to Chase in the amount of $14,500.

DISPOSITION

The order awarding defendants sanctions is affirmed.  Further, Chase shall be awarded $14,500 in sanctions and shall recover its costs on appeal.

NARES, J.

WE CONCUR:

BENKE, Acting P. J.

McINTYRE, J.